OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

AND PREROGATIVE COURT,

JUNE TERM, 1886.

THE PHILADELPHIA AND. READING RAILROAD COMPANY,
appellants,

v.

HENRY S. LITTLE, receiver of the Central Railroad Company
of New Jersey, respondent.

GEORGE DE B. KEIM AND STEPHEN A. CALDWELL, re-
ceivers of the Philadelphia and Reading Railroad Company
appellants,

v.

HENRY S. LITTLE, receiver of the Central Railroad Company
of New Jersey, respondent.

1. An order for the sale of bonds, or granting leave to a receiver of an in-
solvent corporation to sell or dispose of bonds, the property of a third person,
pledged for the receiver's security and protection against debts and liabilities

519

Philadelphia and Reading R. R. Co. *v.* Little.

of the corporation of which he was receiver, made on rule to show cause and the hearing of parties interested, is an appealable order.

2. The regular course for showing cause is by affidavits taken on two days' notice, or taken *ex parte* and served four days before the day of argument.

3. Where an answer duly sworn to is filed to a petition, and it appears by the decree appealed from that the answer was read at the hearing, no objection appearing to have been made thereto, it will be presumed that the answer was regularly served as an affidavit, or that service was waived.

4. A surety is entitled to the benefit of all securities which the creditor holds against the principal as indemnity against loss by reason of his suretyship. The surety's right in this respect may be modified or controlled by contract between him and his principal, but does not require any contract for its support. It is a right which results from the relation of surety and principal, independent of contract, and is founded on the principle of natural justice of placing the charge where in equity it belongs.

5. In equity, relief will be afforded to a surety for his indemnity out of the property of the principal where the equitable rights of the surety may be protected without prejudicing the substantial rights of the creditor, either by an injunction bill to restrain the sale of the surety's property until the principal's property pledged for the same debt is first applied, or by a bill for subrogation to the creditor's rights against the principal's property, or by marshaling the securities and the application of them to the debt in the order in which they are equitably chargeable, according to the circumstances of the particular case.

6. The surety's right in this respect being purely an equitable right, there may be circumstances which will in equity compel him first to pay the debt or submit to the sale of his property, and afterwards seek subrogation or an accounting with his principal, or which will preclude him altogether from the right of subrogation.

7. Where securities of the same general character have been pledged for the same debt, some of which are the property of the principal and some the property of a surety, a suit for the sale of securities for the satisfaction of the debt, to which the principal and surety are made parties, should include the securities owned by the principal as well as those owned by the surety, to the end that the equitable rights of the surety may be protected in the same suit.

On appeal from an order of the chancellor, on respondent's petition.

The Central Railroad Company of New Jersey was, by an order of the court of chancery, made on the 14th day of February, 1877, put in the hands of a receiver as an insolvent corporation. On May 4th, 1883, the company applied to the court

for the discharge of the receivership, and the restoration of its property to its possession and control, and the dissolution of the injunction allowed as ancillary to the receivership.

At that time a temporary debt of the receiver (called in the proceedings the floating debt of the Central Railroad Company), amounting to $2,062,000, was unpaid. By an order dated May 19th, 1883, the receiver was directed to surrender, transfer and deliver to the company all its property in his possession or control, except certain unencumbered assets amounting nominally to $4,987,203.12, enumerated in a schedule, referred to in Exhibit No. 2, which the receiver was directed to retain, "subject to sale or other disposition by the receiver or the court, to protect him and the receivership against all debts, claims and liability of every character connected with the same until final adjustment of the accounts of the receiver, and payment or satisfaction of all said debts, claims and liabilities, or discharge of the receiver and the receivership therefrom."

By the same order it was decreed that the Central Railroad Company should pay and discharge all the lawful debts and liabilities of the receiver and receivership, and that the debts and liabilities of the receiver and the receivership of every character should be charged upon the whole property of the company, and be and remain a lien thereon until fully paid and satisfied, or the receiver and the receivership should be discharged therefrom ; and it was ordered that the temporary debt of the receiver, amounting to $2,062,000, should be paid, satisfied or discharged, as against the receiver and the receivership, within three months after the delivery up of its property to the company. It was further ordered that the surrender, transfer and delivery to the company of its property should not be made, unless for the additional protection of the receiver and receivership, and, for like security, the company should first deliver into the hands of the receiver available securities, readily salable, of the market value of $2,000,000, which securities should be subject to sale or other disposition by the receiver or the court, to secure and protect the receiver and the receivership as aforesaid against all

debts and liabilities of every character connected with the re-
ceivership.

By a report dated May 25th, 1883, the receiver reported that
in compliance with the order of May 19th, there had been de-
livered to him, " on behalf of the Central Railroad Company of
New Jersey," the following securities in addition to the unin-
cumbered assets above mentioned, viz. : $1,000,000 of the first
series consolidated mortgage bonds of the Philadelphia and
Reading Railroad Company, and $2,000,000 of the second series
consolidated mortgage bonds of the said Philadelphia and Read-
ing Railroad Company, to be held and disposed of by him for
the purpose and in the manner specified in the order and decree
of the 19th of May aforesaid ; that the present market value of
the said securities so deposited with him was upwards of
$2,000,000, and that being satisfied with the said securities, he
was ready, upon the order of the chancellor for the purpose, to
surrender all the property in his possession or control to the
Central Railroad Company of New Jersey.

Upon this report, by an order dated May 25th, 1883, after
reciting that " on behalf of the Central Railroad Company of
New Jersey," there had been deposited with the receiver the
bonds last mentioned, " in addition to the unencumbered assets
referred to in Exhibit No. 2 "—all which securities were to be
held by the receiver under the previous orders " for the purpose
of securing the paying and satisfying the temporary debt of
$2,062,000, and to secure the payment, satisfaction and discharge
of the other liabilities of the receiver and the receivership," and
that the Central Railroad Company of New Jersey had thereby,
to the satisfaction of the receiver, secured to be paid all the debts
and liabilities of the receiver and receivership, it was ordered
and decreed that the receiver should surrender, transfer and de-
liver over to the Central Railroad Company all property, real
and personal and mixed, of every kind and description, in his
possession or under his control, " excepting the unencumbered
assets and securities hereinbefore referred to, to be held by the
receiver for his protection as aforesaid," and that the injunction
should be dissolved and the receivership be terminated, juris-

diction of the cause being retained in the manner and for the purpose stated in the decree of May 19th, 1883.

Of the $2,062,000 of the temporary debt of the receiver, in existence when the foregoing orders were made—$1,450,000 being still unpaid—the receiver, by a petition dated March 2d, 1886, applied to the chancellor for an order " directing a sale or other disposition of the bonds above mentioned, or of such portion thereof as might be necessary to pay the balance due on the said temporary debt," stating in the petition that the Philadelphia and Reading Railroad Company and the receivers thereof claimed to have some right to or interest in the said bonds, subject to the petitioner's claim and lien in respect to the same.

The petition was verified by the petitioner's oath that the matters therein set forth were true to the best of his knowledge and belief.

Upon filing this petition a rule ordering the Philadelphia and Reading Railroad Company and the receivers thereof, and all other parties interested, to show cause why the prayer of the said petition should not be granted, was allowed, and it was ordered that a certified copy of the petition and of the order to show cause should be served on the Central Railroad Company and on the Philadelphia and Reading Railroad Company and the receivers thereof.

Separate answers were filed by the Philadelphia and Reading Railroad Company and by its receivers. The answer filed by the receivers of the Reading company is verified by the oaths of the receivers. The answer of the company is under the corporate seal, but not verified by affidavit. No answer was filed by the Central Railroad Company.

By an order dated March 22d, 1886, the chancellor ordered that the prayer of the petitioner be granted, and that the petitioner should be at liberty to sell or dispose of, at public or private sale, the said bonds, or so many thereof as might be necessary for the payment and satisfaction of the said temporary debt. In this order it was recited that the petition and affidavit thereto annexed, and the answers respectively of the said Philadelphia and Reading Railroad Company and of its receivers,

were read, and that counsel on behalf of the petitioner and the said respondents were heard.   The order was made upon petition and answers, without depositions being taken.

From the last-mentioned order the Philadelphia and Reading Railroad Company and its receivers appealed.

*Mr. A. G. Richey* and *Mr. Franklin B. Gowen*, for appellants.

*Mr. John W. Taylor, contra.*

The opinion of the court was delivered by

DEPUE, J.

The contention that this order is not an appealable order cannot be sustained.   The prayer of the petition is that an order be made directing a sale or other disposition of the said bonds, or of such portion thereof as might be necessary, to pay the balance due on the said temporary debt, and the order in question is in terms an order that the prayer of the petitioner be granted.   The superadded words, that the petitioner be at liberty to sell or dispose of the bonds at public or private sale, relate only to his discretion in the manner in which the order shall be executed.   But if the order be construed simply as the grant of permission to make sale or disposition of the bonds, it nevertheless would come within the class of appealable orders.   These bonds were not placed in the petitioner's hands with an absolute and unqualified power of sale or disposition, in case the debt should remain unpaid.   They were deposited with him for his security and protection against liability for a debt the Central Railroad Company had been decreed to pay.   His petition is an appeal to the court for a judicial determination upon his right to make sale or disposition of this property as the means of protecting and securing him from such liability.   An order of the court, made after summoning and hearing parties interested, though in the form of granting leave, is an adjudication of the petitioner's right to make disposition of these bonds for his security and protection.   If it be otherwise, what need was there for making the appel-

lants parties to the proceeding as parties interested, and putting the case in the course of a regular hearing? If an order so made would not conclude the rights of parties, the petitioner would have no benefit in having it made on the hearing of persons interested who were formally brought in as parties by the rule to show cause. And if the order has been erroneously granted, it is an injury to the parties whose property was subjected to be disposed of under its sanction, and they would be parties aggrieved within the meaning of the statute regulating appeals.

Nor is the order in question within the class of orders which regulate the conduct of officers of the court, and in that sense, being matters of discretion, are not appealable. If these bonds were the property of the Central Railroad Company, and the petitioner succeeded to the title of that company in them in virtue of his office as receiver, he would, in the regular administration of his office, be at liberty to make sale and disposition of them in the order which to him might seem advisable or most convenient, as part of the assets of the company in his hands to be administered upon. But these bonds are not in the petitioner's hands as assets of the Central Railroad Company acquired by him in his official capacity. They are the bonds of a third person which were placed in his hands as a pledge for his indemnity and protection against debts and liabilities of the Central Railroad Company. Having accepted these bonds as pledges, and as collateral security for his indemnity, his power of disposition over them is regulated by the rules of law governing bailments of that character.

Another question discussed by counsel relates to the form in which the merits of the controversy are presented. The petition, having been duly sworn to, by chancery rule 138 was evidence of the facts stated. The regular course for showing cause would have been by affidavits taken on two days' notice, or taken *ex parte* and served four days before the day of argument. *Crane* v. *Brigham, 3 Stock. 29, 33.*

It is conceded that the records of the previous orders and decrees in the original cause are part of the record in this case. By these records, and the record in this case, the character of

this transaction sufficiently appears to give the appellants a standing in court to insist on the rights of a pledgor, whose property has been pledged as collateral or additional security for the payment of the debt of another. But we think that the answer of the receivers is entitled to be used on this hearing. It has annexed to it an affidavit of the same import as that by which the petition was verified, and, if served as an affidavit, was competent to be read as evidence at the hearing. For aught that appears it was regularly served in compliance with the practice of the court, or service waived. By the order appealed from it appears that the answers of both the appellants were read at the hearing, and apparently without objection. The objection at this time comes too late.

By the answer of the receivers it appears that the board of managers of the Philadelphia and Reading Railroad Company, at a meeting held May 16th, 1883, adopted a resolution by which the president of that company was authorized and empowered to deposit with the petitioner such securities of the company as at their market value would aggregate $2,000,000, to be used by him as collateral security for the proper liquidation and discharge of his indebtness and obligations as receiver of the Central Railroad Company of New Jersey. The answer also contains an extract from the minutes of the board of directors of the Central Railroad Company of New Jersey, held May 26th, 1883, by which, after reciting that the president reported that the additional securities, to wit, $1,000,000 of first series five per cent. consolidated mortgage bonds of the Philadelphia and Reading Railroad Company, and $2,000,000 of second series five per cent. bonds of the said company, referred to in the order of the chancellor and in his surrender and transfer, had been furnished on account of this company by the Philadelphia and Reading Railroad Company, whereupon it was resolved, that the advance of the securities, referred to in the order of the chancellor, by the Philadelphia and Reading Railroad Company, " be hereby ratified and approved." These are the same bonds which the petitioner, in his report of May 25th, 1883, states were delivered to him " on behalf of the Central Railroad

Company," and which the order of May 25th, 1883, recites as having been deposited with the petitioner " on behalf of the Central Railroad Company of New Jersey," and held by him in addition to the unencumbered assets of that company for the purpose of paying and satisfying the temporary debt aforesaid, for his protection. The character of the transaction in its inception, as between the two companies, distinctly appears by the official action of the boards of direction of the companies respectively.

Nor is the situation, in its legal aspect, changed by the lease executed May 29th, 1883, by the Central Railroad Company, whereby it demised its railroad and franchises to the Philadelphia and Reading Company for the term of nine hundred and ninety-nine years. The lease, in addition to a demise of the lessor's property and franchises, contained an assignment to the Philadelphia and Reading Company of the cash assets and other securities belonging to the Central Railroad Company. The receivers, in their answer, aver that by a decree of the court of chancery of this state, at the suit of stockholders of that company, it was adjudged and decreed that the said lease was invalid. But, independent of that consideration, the lease did not make the Philadelphia and Reading Company the debtor primarily liable for the payment of this debt. It recites that whereas the Central Railroad Company has incurred and is now liable for an indebtedness amounting to the sum of $2,062,000, which is classified and known as its floating debt, and which it is proposed to retire either by the application to the payment thereof of so much of the assets of the party of the first part thereby assigned to the party of the second part, and which shall be subject to the disposition or control of the party of the second part, as may be necessary, or, at the option of the party of the second part, by converting the same into either bonds secured by mortgage or newly-issued shares of the stock of the party of the first part, it being understood and agreed that the cash, assets and other securities thereby assigned to the party of the second part, or the proceeds thereof should be first applied to the payment of the current liabilities of the party of the first part, and the balance of the said assets should be appli-

cable to the payment of the floating debt; and it was further agreed that the party of the second part should pay to the party of the first part, as additional rent, during the term of this lease, on each quarter-day as aforesaid, a sum which should be equal to the interest during the preceding quarter on the said amount of $2,062,000, at which the party of the first part estimates its floating debt.

The indebtedness now under consideration was thus specially provided for, and the only obligation incurred thereby by the Philadelphia and Reading Company, with respect to this debt, was that it should be paid out of the assets of the Central Railroad Company assigned to it by the lease, which should remain after the current liabilities of the Central Railroad Company were paid. The lease and the proceedings of the board of directors of the two companies of May 16th and May 26th, 1883, which were manifestly parts of the same transaction, unite in recognizing the delivery of those bonds to the petitioner as collateral or additional security furnished on account of the Central Railroad Company, to pay a debt for which that company was and still continued to be liable.

The petition makes no mention of the unencumbered assets of the Central Railroad Company retained by the petitioner when the receivership was discharged, and it is admitted that they are on hand undisposed of. In their answers the appellants insist that there should be no sale or disposition of these bonds until the assets of the Central Railroad Company in the petitioner's hands are first applied to discharge the said indebtedness; and they aver that such assets have a market value sufficient to discharge the same.

We have, then, this situation of affairs: a debt unpaid, for which the Central Railroad Company is primarily liable, securities belonging to that company in the petitioner's hands as security for the payment of the debt, and also securities, the property of the appellants, placed in the petitioner's hands as additional security for his indemnity and protection. Under these circumstances, the rights of the parties relatively are too well settled to be open to controversy. A surety is entitled to the benefit of all

securities which the creditor holds against the principal as indemnity against loss by reason of his suretyship. The surety's right in this respect may be modified or controlled by contract between him and his principal, but does not require any contract for its support. It is a right which results from the relation of surety and principal, independent of contract, and is founded upon the principle of natural justice of placing the charge where in equity it belongs. On the payment of the debt, the surety will be entitled to be subrogated to all the securities belonging to the principal the creditor has as security for the debt, in order that thereby the surety may indemnify himself against loss by reason of his suretyship. *1 Story Eq.* § *499; De Col. on Guar. 257; Hays* v. *Ward, 4 Johns. Ch. 123; Mathews* v. *Aikin, 1 N. Y. 595; Irick* v. *Black, 2 C. E. Gr. 189; Aldrech* v. *Cooper, 2 Lead. Cas. in Eq. 282 notes.*

If the surety has entered into an enforceable contract with the creditor to pay the debt, he will at law be compelled to pay the debt, and then look to the collaterals of his principal for indemnity. *Brick* ads. *Freehold National Bank, 8 Vr. 307.* But in equity the surety's remedy is not necessarily confined, as at law, to obtaining indemnity after payment of the debt. Under special circumstances, where his equitable right to have the debt paid by the principal, or out of the latter's property, can be enforced without injury or prejudice to the creditor's rights, he may compel the creditor to resort to securities in his hands or under his control, the property of the principal, in satisfaction of the debt, before coming upon the surety; as, for instance, where the creditor is fully indemnified and will be subjected to no delay, and exposed to no risk of loss if he is compelled to resort first to the property of the principal. *Irick* v. *Black, 2 C. E. Gr. 189, 195.*

The doctrine is a fundamental doctrine of equity, and equitable relief will be afforded according to the circumstances of the particular case, as occasion may arise, where the equitable rights of the surety may be protected without prejudicing the substantial rights of the creditor. Such equitable relief may be afforded to a surety by an injunction bill to restrain the sale of his property

until the principal's property is first exhausted, or by a bill for subrogation to the creditor's rights against property of the principal pledged for the payment of the debt, or by marshaling securities and the application of them in satisfaction of the debt in the order in which they are equitably chargeable. In *Irick* v. *Black, 2 C. E. Gr. 189*, the relief was granted on an injunction bill to stay the sale of the surety's property under an execution on a joint judgment against principal and surety, until the principal's property was first sold. A familiar instance of this kind of relief will be found in suits for the foreclosure and sale of mortgaged premises, where the surety's equity is enforced by directing a sale of the premises in the order of their liability in equity for the payment of the debt. In suits of the latter class equitable relief to sureties is constantly being enforced, especially where property of the principal and the surety is included in the same mortgage, for the reason that in such cases equitable relief may be granted by marshaling the securities and directing a sale in the order of their liability in equity, without any injury or inconvenience to the creditor.

The petition in this case is in the nature of a bill for the foreclosure and sale of property mortgaged. The principal and surety are parties to this proceeding, and the petitioner might have included in his suit application for the sale of all the securities he holds, without any injury to his rights or embarrassment, to the end that the equitable rights of all parties might be determined in this suit. The amount of the indebtedness is very large, and with securities of the principal debtor in hand of considerable value, if not adequate to the payment of the debt in full, undisposed of, it would be inequitable for the petitioner to compel a sale of the property of the surety, pledged to him only as additional security for his protection and indemnity.

The surety's right to have his principal's property applied first in satisfaction of the debt being purely an equitable right, there may be circumstances which will in equity compel him first to pay the debt, or submit to the sale of his property, and afterwards seek subrogation or an accounting with his principal, or

which will preclude him altogether from the right of subrogation. But such circumstances do not appear in this case.

The order appealed from should be reversed, and the petition be dismissed, but without prejudice to another application

For affirmance—McGregor—1.

For reversal—Depue, Dixon, Knapp, Magie, Parker, Reed, Scudder, Van Syckel, Brown, Clement, Cole, Paterson—12.