UNION STONE COMPANY

*v.*

BOARD OF CHOSEN FREEHOLDERS OF HUDSON COUNTY et al.

[Decided June 19th, 1906.]

1. The act of March 30th, 1892 (*P. L. 1892 p. 369; Gen. Stat. p. 2078*), providing for liens for persons doing labor or furnishing materials under any contract for a public improvement made with any city, town, township, or other municipality authorized by law to make contracts for public improvements, applies to contracts with counties for public improvements.

2. Where a contractor for the erection of a building for a county defaulted, and his sureties completed the performance of the contract, they were entitled to subrogation to the rights of the owner against the contractor and against persons claiming liens for materials furnished to the original contractor, to the extent necessary to reimburse them for their necessary outlay, but no further.

3. Where a contract for the erection of a building for a county provided that in case of default by the contractor the county might make a new contract to complete the work and charge the expense to the original contractor, when a default was made by the original contractor, and the sureties on his bond completed its performance, being authorized to do so by resolution of the board of chosen freeholders, this did not constitute a new contract as authorized by the original contract so as to cut off the rights of creditors of the original contractor with respect to the remainder of the contract price unearned at the time of the default.

Heard on bill, answer, replications and proofs in open court.

Under the above title there were tried three causes, which were consolidated. The other pending suits were by Washburn

42

Brothers Company and by Vanderbeek & Sons Company against the same defendants.

The complainants are claimants under the Municipal Lien act.

The defendants are the freeholders of the county of Hudson, Mrs. Jennie A. Judge, executrix of her husband, Gregory A. Judge, and Ferdinand Heintze, Daniel Y. Lewis and Henry Byrne, who were sureties on the bond to the county given by Judge, the contractor.

On September 29th, 1902, the board of chosen freeholders of the county of Hudson made a contract with Gregory A. Judge for the erection of two additions to the county lunatic asylum, for the contract price of $46,400. The contract states that

"in order to enable the said contractor to prosecute the work advantageously, the said architect shall, from time to time, as the work progresses, but not oftener than once a month, or in less sums than two thousand dollars, make an estimate of the amount of work done under this contract since the last preceding estimate was made, and the value thereof according to the terms of this contract. Upon which estimate being made, 80 per cent. of such estimated value shall be paid"

to the contractor.

It was further provided in the said contract that the contractor agrees

"if the work under this agreement shall be abandoned * * * the said board shall have the power to notify the aforesaid contractor to discontinue all work * * * and thereupon the said contractor shall discontinue said work * * * and the said board shall thereupon have the power to place such and so many persons as it deems advisable, by contract or otherwise, to work at and complete the work herein described, or such part thereof, and to use such materials as it may find upon the line of the said work, or to procure other materials for the completion of the same, and to charge the expense of said labor and materials to aforesaid contractor; and the expense so charged shall be deducted and paid by the parties of the first part out of such moneys as may then be due, or may at any time thereafter grow due, to the said contractor under and by virtue of this agreement * * * and in case such expense is less than the sum which should have been payable under this contract if the same had been completed by the said contractor, he shall be entitled to receive the difference; and in case such expense shall exceed the last said sum, he shall pay the amount of such excess to the parties of the first part."

On the same day a bond was given to the county, executed by Gregory A. Judge, Ferdinand Heintze, Daniel Y. Lewis and Henry Byrne, in which they are bound in the sum of $20,000. After reciting that Judge had made the contract aforesaid, which is made a part of the bond, the condition is

"that if the above-bounded Gregory A. Judge shall well and truly in all things, and in good, sufficient and workmanlike manner perform said contract according to the true intent and meaning thereof, and in each and every respect comply with the conditions and covenants therein, and shall at all times thereafter indemnify, keep and save harmless the said The Board of Chosen Freeholders of the County of Hudson, perfectly and entirely indemnified of, from and against any and all manner of actions, suits, liabilities, charges, liens, costs and payments, for and by reason of the premises, or by reason of any debt or obligation contracted for any such work or materials furnished under or by virtue of said contract, and keep all county property and the property of the said The Board of Chosen Freeholders of the County of Hudson clear and free of and from all liens and liabilities by reason of the doing of any of the said work or finding of materials therefor, as aforesaid, by the said Gregory A. Judge, or any other person or party of his authority, direction or request, if authorized as aforesaid, then the above obligation to be void, otherwise to be and remain in full force and virtue."

Judge began work under the contract and proceeded therewith for some little time, but not to the entire satisfaction of the architect.

On July 14th, 1903, a resolution was adopted by the freeholders reciting that the architect had certified in writing that the work was being unnecessarily delayed, and that the contractor was willfully violating his contract, and notifying the contractor to discontinue all work under said contract, and further directing the architect to prepare a specification for the work undone and necessary to be done to completely perform said contract, and report to the board, to the end that the board might award the contract for the doing of such work to some other person, pursuant to said contract.

On the 31st of July, 1903, the architect informs the board that, in pursuance of its directions, he has prepared specifications for the completion of the work, and on the 6th of August, 1903, the board passed a resolution, in which, after reciting that, in spite of repeated notices, the contractor had failed to perform

the work, and in the opinion of the board the said contractor has practically abandoned his contract, it was resolved that the clerk of the board be directed to notify the bondsmen of the said Judge that the board will hold them, individually and collectively, for the faithful performance of the contract.

After the passage of this resolution some conferences were held between the sureties on the Judge bond and certain members of the board of chosen freeholders with relation to the matter.

On December 3d, 1903, the board of chosen freeholders passed the following resolution:

"WHEREAS, On July 14th, 1903, this board adopted a resolution directing Gregory A. Judge, contractor, to discontinue the work under his contract, dated September 29th, 1902, for the erection of additions to the county hospital for the insane; and

"WHEREAS, On August 6th, 1903, this board adopted a further resolution notifying Daniel Y. Lewis, Henry Byrne and Ferdinand Heintze, the bondsmen of said Judge, that they would be held responsible for the fulfillment of the contract of said Judge; and .

"WHEREAS, After the adoption of the said resolution the said Gregory A. Judge died, and said Daniel Y. Lewis, Henry Byrne and Ferdinand Heintze, after consultation and negotiation with the legal representatives of said Judge, undertook the performance of the work in accordance with the specifications and provisions of said contract, the said Judge having abandoned the same; and

"WHEREAS, Mr. Hugh Roberts, the architect in charge of said work, has certified that portions of the work under said contract have been completed by said bondsmen, and that moneys are now due therefor under the provisions of the contract;

"*Resolved*, That the action of the said Daniel Y. Lewis, Henry Byrne and Ferdinand Heintze, in undertaking the completion of the work under said contract, be and the same is hereby approved, and that the moneys to grow due under said contract upon the performance of the uncompleted portion of the work be paid to the said Daniel Y. Lewis, Henry Byrne and Ferdinand Heintze, upon certificate of the architect, as provided in the contract with the said Judge; provided, however, that the legal representatives of the said Judge shall execute and deliver to this board proper instruments, in writing, to be approved by counsel of this board, releasing this board from all claim and obligation under said contract; and provided further, that this resolution shall in nowise affect the rights of any person who may have performed any work or furnished any materials to the said Judge in the performance of the said contract."

After the passage of this resolution there was paid to the defendants Heintze, Lewis and Byrne $30,559. The architect had

certified that Judge had done $6,500 worth of work, and had figured that he was entitled to eighty-five per cent. of this amount (in round figures, $5,500), which the county had paid him, retaining $1,000.

The contract provided that the contractor should only be paid eighty per cent. of the current estimates, so that the architect certified an overpayment of five per cent.

At the time of the hearing the financial account stood in this way: There had been paid to Judge $5,500; there had been retained in the hands of the county, on account of work done by Judge, $1,000; there had been paid to Lewis, Heintze and Byrne $30,559; the total payments, therefore, were $36,059, which, deducted from the contract price of $46,400, left, all told, in the hands of the county $10,341.

It is proven that the contracts made by Heintze, Lewis and Byrne to complete the work called for the aggregate payment of $37,864.

The contractor, Judge, died in the month of September, 1903, and his widow was his executrix. On the 16th day of December, 1903, she executed a release to the board of chosen freeholders of the county of Hudson

"of and from all claim and demand which I, executrix as aforesaid, or said Gregory A. Judge in his lifetime might have had, now have, or ever can have for or by reason of a contract made between the said Gregory A. Judge and the said board of chosen freeholders of the county of Hudson for the erection of additions to the asylum of the said board of freeholders at Secaucus, Hudson county. Said contract bears date the ———————————— day of ——————————, one thousand nine hundred and two, and the said work has been undertaken by Ferdinand Heintze, Daniel Y. Lewis and Henry Byrne, sureties of the said Gregory A. Judge, for the performance of said work."

On the same day, in consideration of one dollar, she assigns unto Heintze, Lewis and Byrne the contract just described, reciting that they

"having been the sureties of the said Gregory A. Judge for the faithful performance of the said contract, and they having undertaken the completion of the work."

The complainants each furnished material or labor to Judge during the time that he was prosecuting the contract, and each gave notices in accordance with the statute.

In addition to the lien claimed by the Union Stone Company, it also claims under an assignment in writing, given by Judge to it, dated September 4th, 1903, and served on the freeholders about September 11th, 1903.

The lien notices of the various parties were served between September 10th, 1903, and December 4th of the same year. The order of priority of the lien claims is undisputed, and their proper order and the amounts claimed are as follows:

*First.* Union Stone Company, $2,061.36.

*Second.* Washburn Brothers Company, $2,325.80.

*Third.* Vanderbeek & Sons Company, $630.86.

The architect testified that the work was now practically completed.

*Mr. Henry Ewald,* for the Union Stone Company.

*Messrs. Cowles & Carey,* for Washburn Brothers Company.

*Messrs. Bedle, Edwards & Thompson,* for Vanderbeek & Sons Company.

*Messrs. Tennant & Haight,* for Heintze, Lewis and Byrne.

*Mr. John J. Mulvaney,* for the board of chosen freeholders of the county of Hudson.

GARRISON, V. C. (after stating facts).

The present Municipal Lien act is that of March 30th, 1892. *P. L. 1892 p. 369; Gen. Stat. p. 2078.* Its title is

"An act to secure the payment of laborers, mechanics, merchants, traders and persons employed upon or furnishing materials toward the performing of any work in public improvements in cities, towns, townships and other municipalities in this state."

It is contended by the defendants in this suit that this statute does not apply because the public improvement for which the contract was made in this suit was not made with a municipality, the insistment being that a county is not within the terms of the act.

The first section of the act provides for liens for persons doing labor or furnishing materials

"in pursuance of or in conformity with the terms of any contract for any public improvement made between any person or persons and any city, town, township or other municipality in this state authorized by law to make contracts for the making of any public improvement."

The question to be determined is whether, by using the words "other municipality," the legislature intended to, and did, include a county.

The act, as originally adopted in this state (*P. L. 1891 p. 418; Gen. Stat. p. 2076*), was copied from chapter 315 of the laws of 1878 of the State of New York. It applied only to cities. Subsequently the present act was passed, extending it to "towns, townships or other municipalities" in this state, and in New York, on the 16th of May, 1892, a similar extension was made. *Hall Company* v. *Jersey City, 64 N. J. Eq. (19 Dick.) 768 (Court of Errors and Appeals, 1902).*

The present act in New York (*Laws of 1897 ch. 418 § 5*) makes provisions for contracts with "the state or a municipal corporation," and in the General Corporation act (*Laws of 1892 ch. 687 § 3*) the New York legislature defined a municipal corporation to include a "county, township, school district, village, city," &c.

The original meaning of a municipality was "a free town under the Roman empire with powers of local self-government." Its precise use now would confine it to subordinate subdivisions of the state having powers of local self-government. *1 Dill. Mun. Corp. (4th ed.) 39 § 20.*

Dillon, however, points out, in the same section, after stating the proper signification of the word,

"But sometimes it is used in a broader sense that includes also public or *quasi* corporations, the principal purpose of whose creation is as an instrumentality of the state, and not for the regulation of the local and special affairs of a compact community."

A county is undoubtedly such an instrumentality. Since this broader and unprecise use of the term exists, it is necessary in each instance, in any jurisdiction where the courts or the legislature have not definitely settled the signification of the word, to determine the meaning intended by the legislative body using the word.

It is not amiss to note in this connection that in the early history of our province counties seem to have exercised certain functions of local government. *P. L. 1692 p. 320 ch. 9 (Leam. & Spi.).*

In *Paul* v. *Gloucester, 50 N. J. Law (21 Vr.) 585 (Court of Errors and Appeals, 1888),* Mr. Justice Van Syckel, in the prevailing opinion, recognizes a county as sufficiently a corporation to be dealt with by the legislature as in the legislation then under review. In the minority opinion of Mr. Justice Reed, he holds that a county is not a municipal corporation, although, in the case of *Frank* v. *Chosen Freeholders of Hudson, 39 N. J. Law (10 Vr.) 347 (Supreme Court, 1877),* the last-named justice treated buildings being erected by the freeholders of Hudson as the property of a municipal corporation, and throughout the opinion thus refers to them.

If the point to be decided was whether a county was a municipality in the sense that it had powers of local self-government, or that it might claim to exercise such powers under a grant in general terms to all municipalities, a very grave question would arise. But I do not conceive that that is the point to be dealt with in the case at hand. The sole inquiry, as I conceive it, in this case is whether the legislature in this act meant to include counties.

It is not questioned in this case that the legislature had power to enact this identical legislation with respect to counties, as well as with respect to the other governmental divisions specified by name, but the question is whether it has done so.

In the case of *Doyle* v. *Bayonne, 54 N. J. Law (25 Vr.) 313 (Supreme Court, 1892),* the court held that the words "other

municipal boards or bodies" applied to the board of education of Bayonne; that the general words "other municipal boards," following the particular designation of certain bodies, included all bodies or boards having municipal governmental functions, whether legislative or administrative. As the court there points out clearly, "the one thing to be ascertained is, What did the legislature mean?"

A brief inspection of our legislation shows that in some instances the legislature has undoubtedly used the word "municipal" or "municipality" in speaking of counties, and so as to include the county.

*Gen. Stat. p. 2172 § 233; P. L. 1894 p. 170:* The first section provides "that the board of authority of any city, county * * * charged with the duty of lighting the streets, roads and public places of such municipality," &c.

*Gen. Stat. p. 2228 § 490; P. L. 1892 p. 39:* "An act to authorize any county, city, town or other municipality to convert coupon bonds," &c.

*Gen. Stat. p. 2237 § 538; P. L. 1871 p. 92:* "An act in relation to the expenditure of public money by municipal corporations." The first section provides "that it shall not be lawful for the board of chosen freeholders," &c.

*Gen. Stat. p. 2254 § 626; P. L. 1892 p. 250:* In the preamble the members of the board of chosen freeholders are classed with "other municipal officers."

The Municipal Lien act under consideration deals with "any city * * * or other municipality in this state authorized by law to make contracts for the making of any public improvements." The county, in this case, was authorized by law to make a contract for a public improvement.

The purpose of the legislation was to secure to a certain named class payment for work or materials furnished for public improvements in municipalities. I think it clear that the legislature meant to include in this legislation any public corporation whose functions included the making of public improvements, whether in any other sense of the word "municipality" the said public corporation could be properly included or not.

In two cases in the court of chancery and one in the court of

errors and appeals this act has been applied to money arising out of a contract made with a county, and although there is no discussion of this question in any of the opinions, it may be held to have been decided *sub silentio* that the act did apply. *Garrison* v. *Borio,* *61 N. J. Eq.* (*16 Dick.*) *236* (*Vice-Chancellor Grey, 1900*) ; *Norton* v. *Sinkhorn,* *61 N. J. Eq.* (*16 Dick.*) *508* (*Vice-Chancellor Grey, 1901*).

This last case was reversed in the court of errors and appeals (*63 N. J. Eq.* (*18 Dick.*) *313*), but not on any point concerning the source of the money.

I therefore conclude that the act does apply.

The next question requiring consideration is, Who is entitled to the funds in the hands of the county, and to what extent?

The county at the present time has in hand an unexpended balance under this contract of $10,341. The original contract price was $46,400, and the county has paid out to Judge $5,500, and to Lewis, Heintze and Byrne $30,559, leaving the above balance as stated.

On behalf of the complainants it is insisted (1) that they are entitled to a lien upon all of the moneys in the hands of the county. Their contention under this head is that before the time they served their notices there was in the hands of the county $1,000 of retained percentage, which became subject to their liens when they served their notices, and that after the service of their notices the contract was carried out by the sureties on behalf of the contractor, and all sums coming due thereunder were subject to their liens.

If this contention be not sustained, then they urge (2) that they are entitled, by reason of the service of their notices, to the $1,000 of retained percentage of the value of the work done by Judge, and, in addition, the difference between the actual amount expended by the sureties in completing the work and the remainder of the contract price. This difference is $2,036, arrived at in this way: Judge did $6,500 worth of work; the remainder of the contract price at the time of his default was therefore $39,900; the total cost to the sureties of the completion was $37,864, leaving the difference above stated.

On behalf of Heintze, Lewis and Byrne it is contended that

the complainants are without right or lien as to any of the funds in the hands of the county, (1) because these defendants are entitled to all of the contract price excepting the $5,500 actually paid to Judge up to the time that he abandoned the contract.

If this contention be not sustained, then they insist (2) that they are entitled to all of the remainder of the contract price after deducting the $6,500 of work actually done by Judge.

In support of their claim that all of the money earned under this contract, either by Judge or the sureties, is subject to their liens, the complainants rely upon the principle enunciated in the case of *Pierson* v. *Haddonfield, 66 N. J. Eq. (21 Dick.) 180 (Vice-Chancellor Grey, 1904).* In that case a contractor defaulted and his surety came forward and completed the work at a cost to him in excess of the remainder of the contract price. The court held that the surety took the place of the defaulting contractor, and in his stead performed his contract as his surety, and that the claims of the materialmen giving notice under the statute were superior to the right of the surety with respect to all work theretofore done by the contractor and not paid to him, and also with respect to the retained percentage of the value of the work done by the contractor. The surety in this case received partial payments for work done in the completion of the contract at the prices agreed to be paid under the contract. He claimed a right of subrogation, but the court denied this right, basing its decision upon the effect and operation of the Municipal Lien act, although he discusses the failure of the surety to show that he had not other funds or securities from the contractor which would secure him against loss. In the view of the learned judge writing that opinion, the surety had no right of subrogation, and the fund in the hands of the county, after the notices, whether earned by the work of the original contractor or the surety in completing the contract, would be subject to the liens.

If that principle were applied in this case at bar, the contention of the complainants would be sustained, and all of the money not actually paid to Judge by the county would be subject to the liens of the claimants to the amount necessary to pay the same.

The sureties here rely, for their contention that they are entitled to all of the contract price excepting that actually paid to Judge, upon the reasoning of the court in the case of *St. Peter's Catholic Church* v. *Van Note,* 66 *N. J. Eq.* (21 *Dick.*) 78 (*Vice-Chancellor Reed, 1904*). In this case, after the contractor abandoned, his sureties came forward and finished. There was a retained percentage in the hands of the owner at the time that notices were served by sub-contractors of the original contractor. After the completion of the work by the sureties there were notices filed by sub-contractors of the sureties.

The sureties in that case contended that they completed as the agents of the owner. The lien claimants of the original contractor contended that the sureties completed for the original contractor, and that all of the money earned, together with the retained percentage of the value of the work done by the original contractor, was subject to their notices or liens. The cost to the sureties of completion was in excess of the remainder of the contract price at the time of the original contractor's abandonment and the retained percentage. The court held that the sureties did not complete as the agents of the owner, nor did they take the place of the contractor. In the course of his opinion he says: "Nor can the contractor claim any portion of the contract price by reason of what the sureties did. The notices and demands of the materialmen and laborers never reached the $1,632, being the uncertified amount of the contract price, and the sureties are entitled to this sum. * * * I also think that the right of the sureties is superior to the claims of the materialmen and laborers. The claims of the latter reach only such money as was due at the time of the several demands and notices, or thereafter became due to the contractors. Nothing, aside from what was already paid, became due, unless the theory is adopted that the sureties were working for the contractors, and therefore, upon completion of the building by them, a debt accrued to the contractors as if they had completed the work. But, as already observed, the sureties were not working for the contractors."

The result was that the court awarded to the sureties the retained percentage of the value of the work done by the original contractor, together with the balance of the contract price.

The sureties in the case at bar insist that if the reasoning of this case is applied they must be held not to have been working for the contractor in completing the building, and must be held to be entitled to the retained percentage and to the remainder of the contract price.

I do not think that this latter argument is sound. Nor can I agree with the doctrine of the case of *Pierson* v. *Haddonfield, supra.* In the case of *St. Peter's Catholic Church* v. *Van Note, supra,* the court was dealing with a situation in which the sureties had been put to a greater cost than the remainder of the contract price, plus the retained percentage, and the court held that, upon performance of the contract, they became entitled to the security held by the owner as far as it was necessary to reimburse them for their necessary outlay. And this I think is sound. I do not think it is properly inferable from this latter case that the court intended by any language used to imply that the sureties would be entitled to the balance of the contract price, or to the retained percentage, if they did not need the same to requite them for their expenditure in completing the contract. This is the unsoundness of the argument of the sureties in the case at bar.

By becoming surety upon a bond to the owner that the contractor will faithfully perform the contract, the surety is under no obligation to the contractor. The surety's obligation is that the contractor will perform the work; that if he does not, and the surety does not, then the surety will pay such damages to the owner as he may suffer by reason of the default.

Upon a default by the contractor, the surety has the privilege of coming forward and completing the work. In doing so he is not acting for the contractor, nor in the right of the contractor. He is acting in his own right, which is to perform the obligation of his contract with the owner.

"The scope of the right of subrogation consists in the immediate transfer, by operation of law, to the promisor in suretyship of all the rights of the creditor against the principal whenever the promisor pays the debt or satisfies the obligation." *Stearns L. Sure. 462 § 261.* "This right of subrogation is independent of any agreement, and rests upon principles of natural justice and equity." *Stearns L. Sure. 403.*

When the sureties, therefore, in the case at bar came forward to fulfill the obligation and perform the contract, they did so in their own right by reason of the privilege of suretyship so to do, and they were entitled to subrogation to all of the rights of the owner against the contractor to the extent necessary to reimburse them for their necessary outlay, but no further. *Stearns L. Sure. 548 § 300; St. Peter's Catholic Church v. Van Note, supra; Prairie State National Bank v. United States, 164 U. S. 227; 41 L. Ed. 412; First National Bank v. City Trust, &c., Co., 114 Fed. Rep. 529.*

This right relates back to the making of the contract between the owner and the original contractor, for the faithful performance of which the contract of suretyship was given. (See cases last cited.)

In the case at bar the cost to the sureties for completing the work did not equal the remainder of the contract price at the time of the original contractor's abandonment. They have not, therefore, suffered any loss, and equity will not extend the doctrine of subrogation further than to protect them from loss.

I have not dealt in greater detail with the facts of this case because I do not deem it necessary to do so. It is clear, I think, that the owner did not, under the clause of the contract permitting him to do so, let a new contract to a new contractor, the effect of which, had he done so, would, of course, have been to have cut off all rights of the creditors of the original contractor with respect to the remainder of the contract price unearned at the time of the abandonment. The abandonment took place in August or September of 1903. The sureties immediately took up the question of completing the contract. They were authorized by the owner, by the resolution of December 3d, 1903, to do so. There was a release obtained from the executrix of the original contractor, and there was also an assignment of the contract from her to the sureties.

I find from all the facts that what the sureties did was to come forward, by reason of their being sureties, and complete the contract for the purpose of fulfilling their obligation to the owner so to do, or to suffer loss if they did not. I therefore find that the obtaining of the release, on the one hand, did not act as

a determination of that contract any more than the obtaining of the assignment made them the agents or assignees of the original contractor in finishing.

It is incumbent to determine the intention of the parties as gathered from all the facts, and not to select a single factor as determinative. That which I think harmonizes all the facts is the finding heretofore stated.

The result is that I find there is in the hands of the county funds amounting to $3,036 subject to the liens of the claimants. This sum is made up of the retained percentage of $1,000 and the $2,036 difference between the actual cost of completion and the remainder of the contract price. The order and priority of the claims have been heretofore stated, and since there is not sufficient to pay the first two, it is not necessary at all to consider the third.

The first claimant, the Union Stone Company, is entitled to payment in full, and the second claimant, Washburn Brothers Company, to the remainder of the money after the prior payment is deducted.

There is some question about one or two items of the claim of the first claimant, but since it had an assignment for the same amount as its claim, which assignment seems to be valid and without objection, I have not gone into detail as to this matter.

I will advise a decree in accordance with the foregoing conclusions.