This suit involves the disposition among numerous claimants, of the funds in the hands of the defendant board of education as the unpaid balance of contract price for the erection of school No. 20. The contractor, L.M. Steele Company, became insolvent and Mr. Vail was appointed receiver thereof, by this court, prior to the completion of the building. The receiver completed the building, and is one of the claimants to the fund. The other claimants were the defendant American Surety Company, surety on the bond of the contractor, *Page 118 
claiming under an equitable assignment from the contractor; certain mechanics' lien claimants whose lien claims were filed prior to the appointment of the receiver; and certain mechanics' lien claimants whose liens were not filed until after the appointment of the receiver.
At the hearing the amount of the fund in the hands of the board of education was definitely fixed and determined, as were also the several amounts due to the several lien claimants. It was also determined that the lien claimants whose claims were not filed until after the receiver's appointment were not entitled to any claim on the fund. Board of Education of Elizabeth v.Zinc, 101 N.J. Eq. 78.
Accordingly, an order has heretofore been entered, fixing the amount of the fund, and directing payment to the several lien claimants whose liens antedated the receivership, including costs and counsel fee to complainant, and to the receiver for the amount expended by him in the completion of the contract. These payments do not exhaust the fund, and the balance would, of course, be due to the receiver as the legal successor of the contractor (and be available in his hands for the payment of creditors of the insolvent contractor, generally) unless the claim by the American Surety Company, as assignee, be adjudged valid, and prior, in whole or in part, to the rights of the receiver.
The surety company contends that its situation in the instant case is the same as that of the indemnity company in Board ofEducation v. Zinc, supra, and that, therefore, upon the authority of the adjudication in that case, the balance of the fund here must be awarded to it. This argument rests upon a false premise.
In the Zinc Case (9 l., p. 79), in the first place, the indemnity company had an actual assignment. "Contemporaneously as to the execution of the bond, the indemnity company took an assignment from the Morgan Company (the contractors) of money that may be due upon default * * * in the performance of the contract." The form of this assignment is not set forth in the opinion, but it is quite obvious that it was an assignment operating in praesenti. In the *Page 119 
second place, the contractor made an actual default in the completion of the building. The contractor defaulted; the receiver of the contractor attempted to complete the building and then stopped; and the board of education completed the building.
In the instant case, although the contractor went into the hands of a receiver, the receiver completed the building. There was therefore no default by the contractor in this respect — for the receiver is in equity the same as the contractor, so far as the surety company is concerned. In the instant case, also, there was not an assignment in praesenti to the surety company, but (at most) an agreement to assign, in the event of default by the contractor.
In the Zinc Case it is definitely adjudicated that whatever rights the indemnity company has in the fund rest upon its assignment; it has no right to the fund by reason of completing the contract, for that it did not do; nor by reason of paying debts due from the contractor to laborers or materialmen (page 82), unless the latter had filed valid liens.
In the instant case, likewise, the surety company did not complete the contract; nor has it paid any claims for which valid liens were filed; nor are there any other facts upon which it rests its claim, other than its alleged assignment.
That which the surety company claims to be an assignment is paragraph 8 of a contractual agreement made by the contractor with the surety company, at the time of — and as a part of the consideration for — the execution by the surety company of the contractor's bond to the board of education for the due performance of the building contract. The pertinent part of the paragraph is as follows:
"And the indemnitor (the contractor) further agrees in the event of any breach or default on his part in any of the provisions of the contract covered by said suretyship that the said surety, as surety, shall be subrogated to all the rights and properties of the indemnitor in such contract, including deferred payments and any and all moneys and securities that may be due and payable at the time of such default * * * or that may thereafter become due and payable on account of said contract * * *." *Page 120 
It seems clear from a reading of this language, standing by itself, that this was not an assignment then and there of the moneys due or to grow due. Assuming, for the sake of the argument, that subrogation is equivalent to an assignment — this is only a promise to assign in future, if, and when, a breach or default by the contractor occurs. It is even more clear when the rest of the paragraph is considered — for there occurs earlier in the same paragraph a provision whereby the contractor"does hereby assign" to the surety all the tools, plant and materials, in the event of failure to complete or carry on the contract; and still another clause whereby the contractor "doeshereby assign" to the surety all the contractor's rights in all subcontracts and materials embraced therein.
By its terms the promise to subrogate is to become operative "in the event of any breach or default [by the contractor] in any of the provisions of the contract." The important question is, therefore, was there any such breach or default? If not, the promise to subrogate (whatever its effect) did not become operative.
The surety company contends that there was breach and default (a) in that the contractor did not complete the building; (b) that the building was not completed until July 10th instead of January 1st; (c) that the contractors failed to pay laborers and materialmen.
As to (a) — it has already been pointed out that there was no default in this respect by the contractor. The building was completed by the receiver of the contractor; and so far as the surety company's rights or interests in this regard are concerned, the receiver of the contractor is the same as the contractor.
As to (b) — it is true that the contract provides the building shall be completed by January 1st, and that it was not completed until July 10th; but the contract also provides that the time for completion of the building shall be extended under certain circumstances, such as strikes, litigation, c. There is no proof (and it rested upon the surety company to furnish such proof) that the time for completion was not *Page 121 
extended to July 10th on account of such circumstances. Hence, there is no proof of breach or default. The presumption indeed is to the contrary — for admittedly the board of education did not exact, nor attempt to exact, any penalty or damages for any delay in completion. (And there is no proof of any damage or prejudice to the surety company from the alleged delay in completion.)
As to (c) — the contract does not provide that the contractor shall pay the laborers and materialmen. There is such a condition in the bond; but the agreement for subrogation specifies expressly and solely a breach or default of the provisions of the contract — not of the conditions of the bond.
It is concluded, therefore, that the surety company has no claim upon the fund superior to that of the receiver, and that the latter is entitled to the balance remaining after the payments to lien claimants and others heretofore decreed.
The agreement contains a promise that the contractors will perform all the conditions of the bond. As to such payments, if any, as the surety company is compelled to make in performance of the conditions of the bond, it will, of course, stand as a common creditor of the contractor and may file its claim with the receiver. *Page 122