In March of 1932 the defendant, a New York corporation, entered into a contract with the New Jersey state highway commission for the performance of certain work, and in accordance with the statute (P.L. 1918 ch. 75 § 203; 1 Cum. Supp. Comp. Stat. p.1765), furnished a bond, with the National Surety Company as surety, in the sum of $881,054, conditioned for the faithful performance of the contract and for the payment of subcontractors, laborers and materialmen for labor performed and materials furnished in completing the contract. The contractor fully completed the work and during its progress received from the state highway commission approximately $74,000 and there remained in the hands of the commission the sum of approximately $141,000, representing the balance of the contract price at the time this bill was filed. Claims by various persons, in excess of such balance were filed with the commission. These claims are varied in character. There are numerous "lien claimants," two by attaching creditors, several by injured employes under the *Page 477 
Workmen's Compensation act and by general creditors of the defendant company.
On May 23d 1933, this court appointed a receiver for the Fredburn Construction Corporation's assets in New Jersey, and subsequently the highway commission, pursuant to an order of this court, paid over the balance of money in its possession to the receiver. On or about April 29th, 1933, the supreme court of the State of New York appointed a rehabilitator for the National Surety Company, and shortly thereafter ancillary receivers of the National Surety Company were appointed by the United States district court for the district of New Jersey.
The prayer of the present petition is that the fund in the hands of the receiver be turned over to the rehabilitator of the National Surety Company, or, in the first alternative, to the ancillary receivers in New Jersey; or, in the second alternative, to the clerk in chancery. The basis of the petitioner's claim is first, the right of subrogation, and second, the right of exoneration, both alleged rights arising out of the engagement of the surety company to guarantee claims of laborers and materialmen and the assignment by the contractor to the surety, at the time that engagement was entered into, of all money to thereafter become due on the contract with the highway commission. The claim of the right of subrogation is now apparently abandoned and it is clear that no such right exists since the surety has not paid any of the claims it guaranteed.St. Peter's Catholic Church v. Vannote, 66 N.J. Eq. 78; UnionStone Co. v. Board of Chosen Freeholders of Hudson County,71 N.J. Eq. 657; Prairie State Bank v. United States,164 U.S. 227; 41 L.Ed. 412.
The right of exoneration is merely a right to have the fund applied to the payment of the guaranteed claims. Greenberg v.Leff, 104 N.J. Eq. 502; Glades County, Florida v. DetroitFidelity and Surety Co., 57 Fed. Rep. 2d 449. Admittedly the surety is entitled to exoneration and the fund is clearly charged with an equity in favor of the surety to the extent that it be applied to the payment of the laborers, materialmen and subcontractors. Greenberg v. Leff, supra; Glades *Page 478 County, Florida v. Detroit Fidelity and Surety Co., supra;Walker v. Brown, 165 U.S. 654; 41 L.Ed. 865. This right exists irrespective of statute. In re Scofield Co., 215 Fed. Rep. 45.
But it does not entitle the surety to custody or control of the fund. Exoneration "should only be awarded with due regard to the interest of the creditor; the creditor should not be subjected to the danger of loss or even unreasonable delay in collecting his debt, * * * the special circumstances of the case may control the relief." Greenberg v. Leff, supra. In case of exoneration the surety "proceeds before payment [by the surety] quia timet and seeks to have payment made to the creditor." Glades County,Florida v. Detroit Fidelity and Surety Co., supra. The petitioner's right to have the fund applied to the payment of the guaranteed claims (exoneration) will be effectively accomplished by the receiver under the supervision of this court.
It is urged on behalf of the receiver that by virtue of the provisions of P.L. 1932 ch. 268 p. 604, the moneys retained by the state highway commission and which are now in the hands of the receiver, constitute a trust fund for the payment of laborers and materialmen, while on the other hand, it is contended that that statute, which was approved June 15th, 1932, has no application because the contract and bond here involved antedate the statute. But the statute antedates the payment to the receiver and is applicable to the fund in his hands with like effect as though it had been paid to the contractor.
I think it is obvious that the purpose of that act (and other co-related statutes enacted the same year) was to avoid, so far as surety companies were concerned, the effect of the decision of this court in Grover v. Board of Education of the Township ofFranklin, 102 N.J. Eq. 415; affirmed, 104 N.J. Eq. 197. It was there held that where a contractor paid a materialman moneys out of a payment by the board of education on account of the general contract, without any designation, express or implied, as to the application of such moneys, the materialman was at liberty to apply it to an antecedent debt due from the contractor, and that a lien subsequently *Page 479 
filed by the materialman against the balance of the contract price in the hands of the board of education was good even as against the surety. And further, that the surety company had no right to require the primary application, by either the contractor or his creditors, of the contract moneys to the payment of debts arising out of the contract. In the course of his opinion in that case Vice-Chancellor Buchanan said: "The moment the money was paid over to Stout [the contractor] by the board, it became and was his own money — money which he had legally earned and which belonged to him alone, just as much as any other money he could have." The obvious remedy to insure a proper application of the contract moneys was to impress them with a trust in favor of the contract creditors. The legislation referred to followed. While the act under consideration designates claimants for "labor, materials and other charges
incurred in connection with the performance of a contract" as the beneficiaries of the trust thereby created, and surety companies are not specifically named, it requires no keen discernment to see behind this remedial (to the surety companies) legislation, the subtle hand of those corporations most likely to be affected by the Grover decision. The most notable effect of this legislation is to insure the very exoneration here sought by the petitioner. By its very terms, both in the title and in the body of the act, the trust is fastened upon "all moneys paid * * * to any person * * * pursuant to any contract for any public improvement." It is the "moneys paid" subsequent to the approval of the act which are affected and the ensuing descriptive language is inclusive of prior as well as subsequent contracts. Exoneration is doubly insured by P.L. 1932 ch. 269 p. 605, which makes the misapplication of such moneys a misdemeanor.
But irrespective of statute, it has already been held by this court, in at least two unreported cases, that such a fund in the hands of a municipality, representing the balance of the contract price of a public improvement, where the contractor was in default, constituted a trust fund for the benefit of all parties having claims against it. Windsor v. A.C. Windsor, *Page 480 Inc., docket 84, page 89; Mayor, c., of Spring Lake v.Century Wood Preserving Co., docket 92, page 437. That doctrine did not apply in the Grover Case because no fund in the handsof the municipality was involved. It was the money already paid to the contractor and its application which was in controversy.
This court has inherent jurisdiction over all trusts. Trusteesof Sea Isle City Realty Co. v. First National Bank of OceanCity, 87 N.J. Eq. 84; 1 Pom. Eq. Jur. § 151. The fund in controversy is now in the hands of an officer of this court, fully empowered to apply it to the purposes of the trust. It would be futile for this court to direct its receiver to pay the fund to the petitioner or the intervening petitioners, for they admit that they have no right or authority to accept, adjudicate upon or pay the claims or claimants against it. In fact, in view of the diversity of the claims against the fund, the court would be derelict in its duty if it did so, because there is no guarantee that if the fund were turned over to the petitioner or to the intervening petitioners it would be properly applied. This court is peculiarly the tribunal which should determine the relative merits and rights of the various claimants to the fund. And it is only in a court of equity that the surety may enforce exoneration. Irick v. Black, 17 N.J. Eq. 189, 195;Philadelphia and Reading Railroad Co. v. Little (Court ofErrors and Appeals), 41 N.J. Eq. 519, 529; Trustees of Sea IsleCity Realty Co. v. First National Bank of Ocean City, supra.
"The doctrine is a fundamental doctrine of equity and equitable relief will be afforded according to the circumstances of the particular case, as occasion may arise, where the equitable rights of the surety may be protected without prejudicing the substantial rights of the creditor. * * * The surety's right to have his principal's property applied first in satisfaction of the debt being purely an equitable right, there may be circumstances which will in equity compel him first to pay the debt, or submit to the sale of his property, and afterwards seek subrogation or an accounting with his principal, or which will preclude him altogether from the right *Page 481 
of subrogation." Philadelphia and Reading Railroad Co. v.Little, supra.
The surety company is at least technically insolvent. It has not yet assumed the payment of any of the claims, and might never pay them. The fund might get into the hands of the general creditors of the surety if this court were to relinquish its supervision and control. And it is obvious that the creditors might possibly suffer loss, and surely, unreasonable delay in the payment of their claims because of the financial difficulties of the surety. Greenberg v. Leff, supra.
I also think it is clear that the petitioner can take nothing as against the claimants for labor and materials by virtue of its assignments. They are void as to these claimants because of retained dominion by the assignor over the contract moneys and ostensible ownership of the tangible chattels in the assignor.Claflin v. Mess, 30 N.J. Eq. 211; Board of Education v.Duparquet, 50 N.J. Eq. 234; Christmas v. Russell, 81 U.S. 69;20 L.Ed. 762.
In Claflin v. Mess, Vice-Chancellor Van Fleet said: "And so, too, a fraudulent purpose will be regarded as manifest where a grantor secretly makes a voluntary deed with a view to future indebtedness, and with a design of so placing his property that he may have the benefit of it in getting credit, but of having it beyond the reach of his creditors in case his business is unsuccessful." In the instant case, the assignment to the petitioner was as security against a possible default of the contractor. If no default occurred the assignment was to remain inoperative; but if default did occur it was to be called into execution. The experiment was at the risk of the assignor's creditors. In Christmas v. Russell, supra, Mr. Justice Swayne said: "The assignor must not retain any control over the fund — any authority to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee." And in Benedict v.Ratner, 268 U.S. 353; 69 L.Ed. 991, the United States supreme court held invalid an assignment of book accounts where the assignor continued in control of the accounts, collected them and used the money in its business. The basis of the rule there invoked, as stated in *Page 482 
the headnote to the case, is "the lack of ownership in the transferee because of dominion reserved to the transferrer." Mr. Justice Brandeis, speaking for the court in that case, said:
"The results which flow from reserving dominion inconsistent with the effective disposition of title must be the same whatever the nature of the property transferred. The doctrine which imputes fraud where full dominion is reserved must apply to assignments of accounts although the doctrine of ostensible ownership does not."
In the instant case the Fredburn company, the assignor, continued in control of the account with the state highway commission and collected thereon $740,000 which it used in its business and might have done the same as to the balance of the contract price except for the diligence of its creditors in tying up the fund and securing the appointment of a receiver. Such control was a reserved "dominion inconsistent with the effective disposition of title." Cogan v. Conover Manufacturing Co.,69 N.J. Eq. 809, is easily distinguishable from the instant case and is not opposed to this decision. There the assignment was to secure an existing debt. Here it was to secure a prospective debt which might not, and in fact has not, come into being, for the surety has not discharged its liability nor has that liability as yet been fixed. And there the assignor did not, as pointed out by Mr. Justice Swayze, retain control of the subject of the assignment except as agent of the assignee. For this same reasonMontgomery v. Phillips, 53 N.J. Eq. 203, as applied to the assignment of accounts, is distinguishable. There the assignee's attorney collected the accounts and although the moneys so collected were paid to the assignor, they were immediately deposited by him in the assignee bank "to be applied in payment of the note."
As to the assignment of all supplies, material and equipment used on this job by the contractor, these tangible assets remained in the possession of the contractor and were used by it in the ordinary course of its business. Under these circumstances, the purported assignment constituted a chattel mortgage (Wilmerding, Hoguet Co., v. Mitchell, 42 N.J. *Page 483 Law 476; Hastings v. Fithian, 71 N.J. Law 311) and is void, for it was not recorded and it had no affidavit of consideration annexed. Here the doctrine of ostensible ownership referred to inBenedict v. Ratner, supra, applies with full force. The form of the transaction is disregarded by a court of equity and the court will not be deceived or misdirected by methods employed to circumvent the law. Montgomery v. Phillips, supra; Glorieux
v. Schwartz, 53 N.J. Eq. 231; Rapoport v. Rapoport ExpressCo., 90 N.J. Eq. 519; Smith v. Commercial Credit Corp.,113 N.J. Eq. 12, 19. This assignment also was not to become effective except upon default of the contractor.
To paraphrase the language of Vice-Chancellor Grey in Craft
v. Schlag, 61 N.J. Eq. 567 (at p. 571), to fit the circumstances of the instant case is to demonstrate beyond argument the invalidity of the present assignments. That language is thus appropriately paraphrased by counsel for the receiver, as follows:
"Examining the transaction in the aspect insisted upon by the petitioner as an absolute assignment, it is admitted that the only consideration for it was the petitioner's liability as surety. Neither the defendant nor the petitioner has changed its position to this liability because of the assignment. Without the assignment, the contractor would be liable to its creditors. It still remains liable. Petitioner is the contractor's surety on this liability. It still remains liable and has not fulfilled its contract by satisfying the debts for which it is surety. It may never satisfy them. It has met with financial reverses and a large part of its assets have been swept from it, and those debts may never be paid by it. The assignment to the petitioner was not in consideration of a previously owed debt. The contractor owed, and will owe, nothing to the petitioner respecting these debts until the petitioner shall have actually paid them."
Petitioner offers Guise v. John C. Guise, Inc., 112 N.J. Eq. 11,
in support of its assertion that the assignments give it the right to control the fund. It is only necessary to point out that in that case all the surety obtained was a preference *Page 484 
over general creditors for money which it actually paid out — a right of subrogation to which it was clearly entitled. It was not given control of the fund — the money was distributed by the receiver under the direction of this court. Nor are Board ofEducation of the City of Elizabeth v. Zinc, 101 N.J. Eq. 78;John W. Barwell, Inc., v. Vail, 108 N.J. Eq. 117 or Board ofEducation of Linden v. Vail, Ibid. 207, applicable to this controversy. The issues there involved were entirely different from the issue here which is solely whether the fund involved shall be administered by an officer of this court who has it in hand, or by a surety claiming the right of exoneration.
To grant the prayer of this petition would be to acknowledge in the surety company a right to compel the creditors of its principal to pursue their remedy either in the federal court or in the courts of another jurisdiction. It has no such right. Where a receiver is appointed for the local assets of a foreign corporation, domestic creditors are entitled to have their rights settled in the courts of this state. Clark v. Painted PostLumber Co., 89 N.J. Eq. 409. These creditors have sought redress against the principal in this court. They will not be compelled to go elsewhere.
The right of a creditor to maintain an action against the principal exists independently of his rights against the surety.50 C.J. 190. The defendant contractor is the debtor primarily liable for the claims of the laborers and materialmen and it is still actively engaged in business in the State of New York. It is vitally interested in making proper adjustments of the claims of creditors on this job and is co-operating with the receiver to that end. This is a right of which it should not be deprived by giving the surety company control of the fund and the litigation concerning it.
There is no merit to the prayer that the fund be turned over to the clerk in chancery. To follow such a course would be merely to transfer the fund from one officer of the court to another officer of the same court; and it could be distributed by the clerk only after litigation to determine the extent and validity of claims against the fund, most of which work has already been done by the receiver. The petition will be dismissed. *Page 485