WEST SHORE RAILROAD COMPANY, PROSECUTOR, v. THE STATE BOARD OF TAXES AND ASSESSMENT ET AL.

UNITED NEW JERSEY RAILROAD AND CANAL COMPANY v. THE STATE BOARD OF TAXES AND ASSESSMENT ET AL.

CENTRAL RAILROAD COMPANY OF NEW JERSEY, HUDSON AND MANHATTAN RAILROAD COMPANY v. THE STATE BOARD OF TAXES AND ASSESSMENT ET AL.

RARITAN RIVER RAILROAD COMPANY v. THE STATE BOARD OF TAXES AND ASSESSMENT ET AL.

LEHIGH VALLEY RAILROAD COMPANY ET AL. v. THE STATE BOARD OF TAXES AND ASSESSMENT ET AL.

ERIE RAILROAD COMPANY v. THE STATE BOARD OF TAXES AND ASSESSMENT ET AL.

LONG DOCK COMPANY v. THE STATE BOARD OF TAXES AND ASSESSMENT ET AL.

Argued February 20, 1918—Decided July 17, 1918.

First and fourth class railroad properties are liable to the tax of one mill on the dollar imposed by chapter 16 of the laws of 1917, commonly known as the Road Tax act.

Before Justices SWAYZE, TRENCHARD and MINTURN.

For the prosecutors, *Collins & Corbin, Robert J. Barri, George Holmes, Edwards & Smith, Albert C. Wall.*

For the defendants, *John W. Wescott,* attorney-general, and *Herbert Boggs.*

The opinion of the court was delivered by

MINTURN, J. The writs of *certiorari* in these cases were allowed for the purpose of bringing up the records of the state board of taxes and assessment, in the cases of the Erie railroad company and six kindred companies and involve the question whether, under the General Railroad act, first and fourth class railroad properties are affected by the provisions of chapter 16 of the laws of 1917, commonly known as the Road Tax act, in so far as that act imposes a state tax of one mill on the dollar for state purposes, for the year 1917, upon those classes of property.

The act in question provides for the levying and collecting in all the municipalities of the state a tax of one mill on the dollar of all real and personal property, which when collected in due course shall be paid to the state treasurer to be placed by him in the state road fund. The insistence of the various prosecutors is, that in so far as this return by the municipalities to the state treasurer involves an increasing of the state tax imposed upon them, it is illegal and void.

This contention is based upon the various railroad enactments, which under the settled policy of the state, have resulted in segregating certain classes of railroad property from the general ratables of the state, and subjecting them to a state tax in lieu of the local tax imposed by the various taxing districts in which such properties are located. *State Board* v. *Central R. R. Co.*, 48 *N. J. L.* 146.

The effect of these enactments was to segregate for taxing purposes by the state what are known as first and fourth class railroad properties, the tax upon which, under the provisions of the supplement of 1906 to the General Railroad Tax act (*Comp. Stat., p.* 5280) shall be computed by the state board of taxes and assessment at the "average rate of taxation." The third section of the act defines the manner in which such average rate shall be struck, viz. : "The average rate of taxation shall be computed and determined by the said board by dividing the aggregate taxes by the aggregate value of the

general property in the state; which said rate so arrived at and determined shall be entered upon the records of the board, and shall constitute the average rate of taxation for the year." *Pamph. L.* 1906, *p.* 122.

The Railroad and Canal act provides that the tax so imposed shall be in lieu of all other taxation upon the property within its provisions. In this situation the legislature passed what is known as the Road Tax act (chapter 16, laws of 1917), which imposes a tax of "one mill on each dollar of the value of all the real and personal property" in every municipality, "to be assessed, levied and collected in the same manner and at the same time as other taxes upon real and personal property are now assessed, levied and collected." This tax when collected is to be eventually paid to the state treasurer, who is directed to place the same in the state road fund.

The insistence of the prosecutor in effect is, that while this additional tax is to be collected from all the taxable real and personal property in the state, it cannot legally be exacted from them because of the particular status they occupy under the legislation, peculiarly affecting them, and to which we have adverted. The contention thus made is not without some color of support, in view of the adjudication of this court in *Gillen* v. *Essex County Board of Taxation,* 91 *N. J. L.* 76; *Johnson* v. *City of Passaic, Id.,* and *Borden* v. *Jersey City, Id.*

The effect of these decisions, however, was simply to determine that the act of 1917 does not *ex proprio vigore* impliedly or expressly comprehend a tax upon first and fourth class railroad property. That determination, however, does not reach the inquiry contained in the present issue, which is whether, when the state board has received its total of local municipal aggregates for the purpose of computing the state tax rate, it can ignore the additional one mill added to the local levy and make up the state tax rate, minus that added factor, or reduced to the concrete legal inquiry presented here, did the legislature by the act of 1917 evince an intent to im-

pose the additional one mill of taxation upon the segregated railroad property retained by the state for the purposes of taxation, as well as upon the general ratables of the state assessed locally? Obviously a negative answer to this inquiry would result in attributing to the legislative body an intent to impose what must be conceded to be a state tax for a state purpose, by a process of elimination which would in its application, produce neither uniformity nor equality, and thus run counter to the constitutional inhibition.

The inquiry, therefore, obviously resolves itself into one of legislative intent, and to divine the legislative purpose we must consider not only the act *sub judice,* imposing the tax, but all kindred legislation; for the rule of construction is fundamental that when divers laws are made relating to one subject-matter, the whole must be considered as constituting one system, and mutually connected one with another. *N. J. Insurance Co. v. Meeker,* 37 *N. J. L.* 282, 304.

The act of 1906, chapter 82, which is the supplement to the act for the taxation of railroad and canal property, leaves the state board no discretion in establishing the average rate of taxation, for the state ratables, so far as the local returns from the various taxing districts are concerned.

The state board is required by the provisions of that act to accept them at their face value, and make the state computation of the average rate upon the basis of the figures so returned. The act of 1917 is mandatory, in terms, and requires the addition of the road tax to the local rate, thus necessarily increasing the average rate of taxation when the local returns are made the basis of the computation of the state board, in accordance with the requirements of the supplement of 1906.

That such must have been the legislative purpose is manifest unless we are prepared to attribute to the law-making body an intent to effectuate by an inequality of taxation, the raising of revenue for a general state purpose, or an absence of consideration for the *modus operandi* of existing laws upon the same general subject.

It is rather to be presumed that the legislature, conscious of the legal effect and operation of existing laws, passed the act *sub judice,* for the purpose of effectuating the end that its language (taken in connection with legislation, which had established a familiar and well understood policy of dealing with the subject of taxation, both state and municipal) must necessarily effectuate, unless the present equilibrium established as a state policy of equality, in the distribution of the public burdens is to be seriously impaired and disturbed.

Consonant with this view the rule of construction has been held to be that the mind of the legislature is presumed to be consistent, and in case of a doubtful or ambiguous expression of its will, such a construction should be adopted as will make all the provisions of the statute consistent with each other, and with the pre-existing body of the law. *Shaw* v. *Macon,* 21 *Ga.* 280; *Fouke* v. *Fleming,* 13 *Md.* 392; *Black Interp. of Laws,* 98.

If a doubt as to the legislative purpose were to be indulged in this regard, it is obviously dissipated by the provisions of chapter 230 of the laws of 1917, an act passed at the same session, and entitled "An act to appropriate and to provide for the payment of a portion of the state tax levied and assessed upon railroad and canal property in this state to the state road fund, to be used for state road purposes."

The preamble of the act clarifies the legislative intent expressed in the earlier act by reciting the legislative purpose in levying the tax as follows: "Whereas the tax now levied upon railroad and canal property, under and by virtue of the provisions of the act (of 1884 and 1888) and of the supplements and amendments thereto will be increased in the rate of one mill on the dollar" by reason of the passage of the act *sub judice,* "and it is the legislative intent to effect such increase of taxation upon railroad and canal property, and to appropriate and apply such increase to the state road fund for state road purposes," and the act accordingly makes the appropriation.

The imposition of the road tax is superadded to the local burdens by practically the same legislative *modus operandi* as is the state school tax, the inclusion of which has never been questioned, as a legitimate factor in the computation of the average rate of taxation by the state board.

These considerations make it manifest that the action of the state board in including the additional one mill on the dollar, as returned by the local assessors, was in accordance with the letter and spirit of the legislation providing for it, and that the proceedings of that board in that regard should be affirmed.

The action of the board, however, in the case of the Erie railroad comprehended an assessment and tax on the tangible personal property of that company, which included an assessment and tax on certain Pullman equipment, which it is conceded by the attorney-general has no *situs* in this state for the purposes of taxation, being used entirely in interstate traffic. That situation manifestly exempts the Pullman equipment from taxation here. *Central R. R. Co. et al.* v. *State Board,* 49 *N. J. L.* 1.

The tax to that extent will be set aside, and in other respects affirmed.