The bill is filed by the sureties on the bond of the late Charles T. Kavanagh, given to secure performance of a contract between Kavanagh and the state highway commission for work on one of the state highways. The defendants are subcontractors, materialmen, the administrator of Kavanagh's estate, and the National Bronx Bank of New York. *Page 473 
By an ex parte order taken when the bill was filed, the highway commission was directed to pay and did pay into court the balance due on the Kavanagh contract. The purpose of the bill is to ascertain the liability of complainants to the several defendants, as well as the interests of the parties in the fund deposited.
As required by section 4 of "An act to protect persons performing labor or furnishing material for the construction, alteration or repair of public works" (P.L. 1918 p. 203), Kavanagh's bond, on which complainants are liable, was conditioned to the payment of "all lawful claims of subcontractors, materialmen and laborers for labor performed and materials furnished in the carrying forward, performing or completing of said contract." On January 4th, 1933, the highway commission duly accepted the work done by Kavanagh under his contract. Within eighty days thereafter, several of the defendants, pursuant to section 3 of the statute, gave complainants a statement of the amount due them for labor or material furnished either to Kavanagh or to subcontractors. After the expiration of the eighty-day period but within one year from the acceptance of the work by the highway commission, namely, on July 21st, 1933, the bill was filed, and the defendants were enjoined from bringing suit on their claims against complainants. Another group of defendants filed with the state highway commission claims for the amounts due them but did not serve notices on complainants pursuant to the statute of 1918. The National Bronx Bank occupies a peculiar position which will be stated in due course.
In the absence of statute, one who furnishes material or labor for a building or any structure which is part of the land, has no lien, legal or equitable, on the land, the structure, or the contract price. The right of lien in every such a case is the creature of statute. Unless aided by legislation, the materialman or the laborer must rely solely on the general credit of the person with whom he contracts; he has no greater interest in the sum due from the state to Kavanagh or from the latter to a subcontractor, than any other creditor. The Mechanics' Lien act (Comp. Stat. p. 3291), or the *Page 474 
Municipal Mechanics' Lien act (Comp. Stat. p. 3315), does not afford protection to materialmen or laborers engaged in a public improvement under contract with the state highway commission.Curtis Hill Gravel and Sand Co. v. State Highway Commission,91 N.J. Eq. 421. Protection in such cases was first given by the act of 1918 above referred to and then not by a lien but by requiring the bond of the principal contractor to contain a condition inserted for their benefit.
The effect of the bond, so far as it relates to those who contracted direct with Kavanagh, is to leave him the principal debtor and to make complainants his sureties for the amount which he owes. Incident to the creation of the suretyship, there arose the usual duties, rights and remedies of a surety. If complainants pay a debt of Kavanagh for which they are liable, they stand in the creditor's position and may sue Kavanagh for the amount paid, but they do not thereby acquire a lien on the sum due from the highway commission, for the creditor has no lien. Board of Education v. Zink, 101 N.J. Eq. 78; Grover v.Board of Education, 102 N.J. Eq. 415; 104 N.J. Eq. 197; John W.Barwell, Inc., v. Vail, 108 N.J. Eq. 117; 111 N.J. Eq. 431;Guise v. John C. Guise, Inc., 112 N.J. Eq. 11. Or complainants may, on a bill quia timet, require Kavanagh to pay the debt or, under certain circumstances, require his creditor to make the debt out of the principal debtor's estate. Greenberg v. Leff,104 N.J. Eq. 502; 146 Atl. Rep. 196, and earlier cases there cited. But complainants cannot enforce a non-existent lien. They may obtain a money decree generally against Kavanagh in favor of the creditor, but not a decree directing payment out of the amount due from the state highway commission or out of any other particular part of his estate. Counsel refer to Stulz-SicklesCo. v. Fredburn Construction Co., 114 N.J. Eq. 475, in which one of the most learned members of this court, Vice-Chancellor Berry, spoke of a surety's right of exoneration as a right to have a particular fund applied to the payment of the guaranteed debt, citing Greenberg v. Leff, supra, and Glades County v.Surety Co., 57 Fed. Rep. 2d 449. In the first of these *Page 475 
cases, the right of exoneration discussed is a right to a decree that the principal debtor pay the debt without reference to any fund. In the Glades Case, there was a fund which, by the contract of suretyship, stood as surety for performance and it was this fund which the court ordered to be used for the relief of the surety. The only question before Vice-Chancellor Berry in the Fredburn Case was whether certain moneys in the hands of a receiver for the principal debtor should be turned over to the surety and he held that they should not. The passage to which counsel refer was outside the question at issue and so does not have the weight given a judicial determination. I am satisfied that the correct rule is that which I have stated.
The situation arising from the bond so far as it relates to those who furnished labor and material to a subcontractor and not to Kavanagh, is somewhat different. Kavanagh himself, by virtue of the bond, is a surety for the subcontractor, the principal debtor, and complainants are supplemental sureties, that is, their liability is successive to Kavanagh's. Again, the familiar rules for the relief of sureties apply not only in favor of complainants but also in favor of Kavanagh. But here a new circumstance intrudes. Kavanagh is not only surety for the subcontractor, for example, the Corbetta Concrete Corporation, but he is also a debtor to the concrete corporation. Upon payment of a debt due by the latter, he is subrogated to the claim of the creditor whom he pays, and can offset the amount due to him as subrogee against what he owes the concrete corporation (Nutz v.Murray-Nutz, Inc., 109 N.J. Eq. 95), and until he can ascertain whether the claim against himself as surety for the concrete corporation is valid, he may, if in danger of loss, retain for his security the amount which he owes to the concrete corporation. 2 White T. 1345, American note to Earl ofOxford's Case; Tipula v. Garfield Mill, 115 N.J. Eq. 246.
Complainants, as supplemental sureties, could, in an action brought against them by a subcontractor's creditor, urge any defense which Kavanagh might have, and in the present suit they may avail themselves of his equitable right of set-off. *Page 476 
This was the situation created by the statute of 1918 and by the bond given thereunder when the contract between the highway commission and Kavanagh and the contracts between him and the subcontractors were made. Thereafter, on June 15th, 1932, two statutes were approved and took effect immediately — chapters 268, page 604 and 269, page 605, of the laws of that year. The first provides that moneys paid by the state or a department thereof to any person pursuant to the provisions of a contract for a public improvement made between such person and the state or the department "are hereby declared to constitute a trust fund in the hands of the said person, firm or corporation as such contractor, until all claims for labor, materials and other charges incurred in connection with the performance of said contract shall have been fully paid." The second statute, a supplement to the Crimes act, denounces as guilty of a misdemeanor any such contractor "who shall use any such moneys so received from the State of New Jersey * * * for any purpose other than the payment of claims for labor and material and other charges incurred in connection with the performance of said contract."
Chapter 268 creates an equitable lien to secure claims for labor, materials, c., and leaves the residuary title in the contractor. The important question is, what claims are secured? It is urged on the one hand that the phrase "all claims for labor, materials and other charges incurred in connection with the performance of said contract," should be construed to mean all claims incurred by the contractor or any subcontractor and it is argued on the other hand that the only claims secured are those incurred by the contractor himself. The first construction would make the contractor's property liable for the debt of another. The legislative purpose, to have this effect, must be plainly expressed and not depend on implication. The phraseology of the statute may be contrasted with that of our other laws dealing with the same general subject, the Mechanics' Lien act, section 3, the Municipal Mechanics' Lien act, section 1, and the Bond act of 1918. These statutes leave nothing to implication but *Page 477 
plainly express a purpose to make the contractor or his property, the contract price, liable not only for his own debts but for the debts of subcontractors. The Municipal Mechanics' Lien act, the Bond act and the statute now under consideration, relate to one subject-matter, namely, the security of materialmen and laborers on public works and they must be considered as constituting one system and mutually connected, one with another. West ShoreRailroad Co. v. State Board, 92 N.J.L. 332, 648;104 Atl. Rep. 335; 106 Atl. Rep. 893. The first of these laws gives to materialmen and laborers a lien upon the contract price while it remains in the control of the municipality; the Bond act, which applies not only to municipal work but to work done for the state, adds the security of the contractor's bond, and both laws require the claimant to give notice within a short, stated period. The present act adds the lien on the money after it reaches the contractor's hands, but it requires no notices to be filed and contains no limitation of the time during which the fund is subject to claims. Chapter 269 forbids the contractor from using the money except for the payment of claims. Must he hold the fund intact until some statute of limitations shall have run, or can he never spend his profits? Of course, he is presumed to know what debts he himself owes, but how can he know with certainty what debts are owed by his subcontractors and by others even more remote in the contract chain? The purpose of the legislature in this enactment was, I think, to re-enforce the bond required by the act of 1918 and also to give security to those who dealt directly with the contractor and who failed to proceed under the act of 1918. The claims to secure which the trust is created, should be construed to mean claims on which the contractor is liable by reason either of his promise to pay or else of action taken under the act of 1918.
Again, the fund is a trust fund in the contractor's hands but not in the hands of the subcontractor, since the latter has no contract with the highway department. To parties who furnish labor or materials to subcontractors but who fail to proceed under the 1918 law, no equitable lien is given. *Page 478 
The statute of 1932 was passed after Kavanagh's contracts with the highway commission and with his subcontractors were made and after a large part of the work was done. If the statute were construed to impose a lien on the contract price, for the benefit of persons to whom the contractor is not otherwise liable, I would say that the constitution prevents the act from operating in this cause. But since, in my opinion, the lien runs to those only to whom the contractor is bound, the statute does not, I take it, impair his vested rights, or the obligation of his contracts. 12 C.J. 1072. The law should be construed, however, to give a lien only for labor or materials furnished after it took effect, and not for work theretofore done. Steurwald v.Munn, 90 N.J. Eq. 474. The right of lien is determined by the law existing when the work is done. Passinger v. Magliaro,109 N.J. Eq. 381. Kavanagh's counsel informs me that his client is indifferent whether there be a general pecuniary decree against him, or a decree for payment out of the fund. So I may proceed as to him, as if all the work had been done after the statute of 1932 became operative.
In the present instance, the contract price was never actually paid by the highway department to Kavanagh, but instead was paid into court to be disbursed in the suit. This was equivalent to payment to Kavanagh.
Now for the claim of the National Bronx Bank. On September 23d 1932, the bank loaned one of the subcontractors, Corbetta Concrete Corporation, $28,000 on a demand note and took as security an assignment of all money due or to become due to the concrete corporation out of the retained percentage under its subcontract with Kavanagh. The assignment recites that the retained percentage at the date thereof was $29,983; it is now $38,128.50. The concrete corporation has failed to pay the bank and it has failed to pay its own materialmen to whom is owing approximately the sum last mentioned. Most of these materialmen filed statements of their claims with complainants within the time required by law, so that complainants and Kavanagh are undoubtedly liable to them. Can the amount for which complainants *Page 479 
and Kavanagh are liable to these claimants, be set off against Kavanagh's indebtedness to the concrete corporation or to the bank as assignee? At the time the assignment was made, the concrete corporation had not yet fully performed its contract with Kavanagh. The general rule in such cases is that the assignee takes subject to such counter-claim subsequently accruing as may properly be set up against the assignor, arising out of the same contract or transaction. 57 C.J. 482. It is likely, though I need not so decide, that the equitable right of set-off, in a case of this character, would be superior to the title of the assignee, regardless of the date of the assignment. The indebtedness of Kavanagh and of complainants to the concrete corporation's materialmen grows out of the contract between Kavanagh and the concrete corporation, and these debts may be paid in the present suit and set off against the demand of the bank.
I reach the same conclusion with regard to the fund in court. The only title of the bank to that fund is the one given by the statute of 1932 to the concrete corporation. The lawful claims of the subcontractor's materialmen are a prior charge on that part of the fund which would otherwise go to the subcontractor.
To conclude, the fund in court should be used to pay all claims incurred in connection with the performance of Kavanagh's contract and for which he is liable, either by reason of his promise to pay or else by action taken by the claimants under the act of 1918. The amount payable to any claimant is subject to reduction to the extent of his own debts satisfied out of the fund. The bank will take what, if anything, would be payable to the concrete corporation were it not for the assignment. The claims will carry interest in accordance with the rule of J.J.Shannon Co. v. Continental Casualty Co., 106 N.J.L. 200. Any balance remaining will be payable to Kavanagh. Defendants who did not perfect their claims under the Bond act and to whom Kavanagh is not liable, take nothing. If the fund be insufficient to pay all claimants in full, they will, I assume, share pro rata, although the point was not argued. And the deficiency will be made good by Kavanagh *Page 480 
in the first place and in the second place by complainants, so far as they are liable under the act of 1918.
The amount due McClintic-Marshall Corporation and Taylor-Fichter Steel Construction Company is in dispute and is being determined in a separate cause. Contested claims of other defendants may be settled on a reference to a master. I see no reason why those whose claims are undisputed should be further delayed in the receipt of what is due them. Final decrees for their relief may be made under rule 15. All defendants who share in the fund are entitled to costs. I will hear counsel whether the costs should be borne by complainants or Kavanagh.