ATLANTIC COUNTY CIRCUIT COURT.

BARTHOLOMEW GEORGE ADAMS, PLAINTIFF, v. THE
COUNTY OF ATLANTIC, A MUNICIPAL CORPORATION
OF THE STATE OF NEW JERSEY, DEFENDANT.

Decided May 20, 1947.

For the plaintiff, *Coulomb, McAllister & Hunter.*

For the defendant, *Edmond C. Gaskill, Jr.*

JOSEPH L. SMITH, C. C. J. This is a motion to strike the complaint based upon seven grounds. The seventh ground will not be considered as the complaint has been amended so as to eliminate this objection. The remaining six grounds upon which defendant relies assert that the complaint is insufficient in law. The complaint alleges that the plaintiff, an investigator in the office of the Prosecutor of the Pleas for the County of Atlantic, is entitled to certain salary or compensation from the defendant which amounts to the difference between his compensation as a member of the United States Naval Reserve and what he would have received had he continued in his county employment from May 6th, 1943, to June 22d, 1945. It appears from further allegations of the complaint that the plaintiff was appointed to his position in the office of the Prosecutor of the Pleas in July of 1935. He continued in active service as an investigator until April 20th, 1943, but was paid until May 6th, 1943, for accrued vacation time. On September 29th, 1941, the plaintiff enlisted in the New Jersey State Guard and on October 29th, 1942, he resigned to accept a commission as a lieutenant in the New Jersey State Guard. On October 30th, 1942, plaintiff was appointed a lieutenant in the said State Guard and continued as such until and including at least the 19th day of April, 1943. On November 27th, 1942, while serving as a lieutenant in the State Guard plaintiff enlisted in the United States Naval Reserve and was assigned to inactive service. Plaintiff was notified on or about April 14th, 1943, to report for active duty in the United States Naval Reserve. Plaintiff, in accordance with his orders, submitted his resignation on the night of April 19th, 1943, and was assigned to active duty in the United States Naval Reserve on April 20th, 1943. Plaintiff served in the United States Naval Reserve on active duty until he was honorably discharged on June 22d, 1945.

The cause of action herein asserted by the plaintiff is based on *R. S.* 38:12–4; *N. J. S. A.* 38:12–4, and *R. S.* 38:12–5; *N. J. S. A.* 38:12–5, which read as follows:

"*R. S.* 38:12–4; *N. J. S. A.* 38:12–4. Leave of absence for state and municipal employees without loss of pay; additional to regular vacation.

"All officers and employees of this State or of any county or of any municipality in the State or of any board or commission of the State or of any county or municipality who are members of the National Guard, naval militia or New Jersey State Guard shall be entitled to leave of absence from their respective duties without loss of pay or time on all days during which they shall be engaged in field training or other duty ordered by the Governor.

"Leave of absence for military or naval duty shall be in addition to the regular vacation allowed to such employees by the State, county or municipal law, ordinance, resolution, or regulation. As amended L. 1941, c. 109, p. 251, Sec. 23."

"*R. S.* 38:12–5; *N. J. S. A.* 38:12–5. Salary to equal loss suffered while on active service.

"During the absence of any such officer or other employee, mentioned in section 38:12–4 of this title, on active service with the army or navy of the United States or any other organization affiliated therewith, such person shall receive such portion of his salary or compensation as will equal the loss he may suffer while on such active service."

The question before the court as raised by this motion is whether or not the plaintiff is within the provisions of *R. S.* 38:12–4; *N. J. S. A.* 38:12–4, and *R. S.* 38:12–5; *N. J. S. A.* 38:12–5. The defendant contends that the plaintiff is not entitled to the benefits contained in *R. S.* 38:12–4; *N. J. S. A.* 38:12–4, and *R. S.* 38:12–5; *N. J. S. A.* 38:12–5 because on the date the plaintiff was assigned to active duty in the United States Naval Reserve he was not a member of the New Jersey State Guard.

In deciding this motion the court is permitted to consult the statutes of the United States, the appropriate New Jersey statutes, and the records of the applicable government departments. Authority for this is contained in the case of *Stephens* v. *Civil Service Commission,* 101 *N. J. L.* 192 (at p. 194); 127 *Atl. Rep.* 808 (at p. 809), wherein Judge Clark said, "the general principles of statutory construction applic-

able are well established and can be briefly stated. In assisting us to arrive at the intention of the legislature we are permitted to consult the statutes of the United States, of our own state, and such records of the government departments involved as are properly matters of judicial notice." Counsel have also stipulated that the resolution of the Board of Chosen Freeholders of the County of Atlantic and the certified copy of the record from the office of the Adjutant-General of the State of New Jersey, the affidavit of the plaintiff, the photostatic copy of plaintiff's record in the office of the Adjutant-General of the State of New Jersey and the affidavit of Brigadier General Bowers be used and considered by the court in deciding this motion.

Where the words of a statute are clear and their meaning and application are plain, sensible and substantial there is no authority for and the statute cannot be controlled by judicial construction. *Herod* v. *Mutual Chemical Company of America,* 115 *N. J. L.* 369; 180 *Atl. Rep.* 432; *Alexander Hamilton Hotel Corp.* v. *Board of Review of New Jersey Unemployment Compensation Commission,* 127 *N. J. L.* 184; 21 *Atl. Rep.* (2d) 739. The words of *R. S.* 38:12–4; *N. J. S. A.* 38:12–4, and *R. S.* 38:12–5; *N. J. S. A.* 38:12–5, are clear but their meaning and application are not plain, sensible and substantial with reference to members of the New Jersey State Guard. By virtue of *R. S.* 38:5–7.1; *N. J. S. A.* 38:5–7.1, it is clear that the New Jersey State Guard may not be called, ordered, or drafted, as such, into the military service of the United States. The same statute expressly states that no member of the New Jersey State Guard shall be exempt from military or naval service under any law of the United States by reason of his enlistment or commission in the New Jersey State Guard. Congress by statute provided that the Naval Reserve shall be a component part of the United States Navy. This statute (34 *U. S. C. A.* 853) was passed June 25th, 1938. Section 853 b of this act provides that no officer or man of the Naval Reserve shall be a member of any other naval or military organization except the Naval Militia. It is further provided that by appointment or enlistment in the Naval Reserve, one is obligated to

serve in the navy in time of war or when in the opinion of the President a national emergency exists. State statutes should be so construed as to harmonize with federal legislation on the same subject and facilitate the administration of justice, 59 *Corp. Jur.* 1053. All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. 59 *Corp. Jur.* 1038. It should be noted that *R. S.* 38:12–4; *N. J. S. A.* 38:12–4, which has its source in the laws of 1937, chapter 49, was amended by the laws of 1941, chapter 109, so as to change the original designation of "New Jersey Guard" to "New Jersey State Guard." This conforms with the classification of the militia as contained in *R. S.* 38:1–1; *N. J. S. A.* 38:1–1. Thus the court must conclude that members of the New Jersey State Guard are to receive the same benefits under this statute as members of the New Jersey National Guard and the naval militia. In *Tucker* v. *Beltramo*, 117 *N. J. L.* 72 (at *p.* 77); 186 *Atl. Rep.* 821 (at *p.* 824), Mr. Justice Heher said: "A modification of the law was indubitably contemplated. This is fairly to be presumed from the change in phraseology. There is a presumption against useless legislation." In the case of members of the New Jersey National Guard and the naval militia the applicability of *R. S.* 38:12–5; *N. J. S. A.* 38:12–5 can be effected upon their respective units being called to active duty with the United States Army or Navy. But what of members of the New Jersey State Guard? That unit cannot be called into active duty by the federal government as is provided in *R. S.* 38:5–7.1; *N. J. S. A.* 38:5–7.1. It is conceivable that members of the New Jersey State Guard could be drafted into federal service and thus become eligible for the benefits of *R. S.* 38:12–5; *N. J. S. A.* 38:12–5. Would this deprive a member of the New Jersey State Guard otherwise eligible for the benefits of *R. S.* 38:12–5; *N. J. S. A.* 38:12–5, of the privileges of this statute if he volunteered for service in the United States military forces? It is clear that no distinction is to be made between one who volunteered his services and one who was drafted. Mr. Justice Heher in *Kobylarz* v. *Mercer*, 130 *N. J. L.* 44 (at *p.* 48); 31 *Atl. Rep.* (2d) 208 (at *p.* 212), said: "There can be no

distinction in this behalf between those who volunteer for service during the war and those whose services are conscripted." The fact that this plaintiff was ineligible for the draft as is contended by the defendant is of no consequence. A further question arises as to whether the provisions of 34 *U. S. C. A.* 853 prohibiting members of the Naval Reserve from being members of any other military organization except the Naval Militia would not nullify the provisions of *R. S.* 38:12–5; *N. J. S. A.* 38:12–5, with respect to members of the New Jersey State Guard. The United States Constitution provides that the constitution and the laws passed pursuant thereto shall be the supreme law of the land, article 6, clause 2, thus if a law passed by a state in the exercise of its acknowledged powers comes into conflict with an act of Congress, the state law must yield. In *State* v. *Sutton,* 87 *N. J. L.* 192 (at *p.* 194); 94 *Atl. Rep.* 788, Mr. Justice Garrison said: "Another canon of constitutional law is that the language of the legislature will if possible, be so construed as to uphold rather than to destroy a statute it has enacted." In so far as members of the New Jersey State Guard are concerned 34 *U. S. C. A.* 853 b and *R. S.* 38:12–5; *N. J. S. A.* 38:12–5, are in conflict if a literal interpretation is to be given to both of these statutes. Strictly speaking, a member of the New Jersey State Guard cannot be a member of the United States Naval Reserve. It would require a separation from the New Jersey State Guard prior to commencing active duty, as distinguished from inactive duty, with the United States Naval Reserve. I make this distinction in view of my remarks to follow concerning "inactive duty." However, I do not think that the provisions of 34 *U. S. C. A.* 853 b would operate automatically to deprive a member of the New Jersey State Guard of his status as such by virtue of the fact that such a member is assigned to active duty with the Army or the Navy. At most I think the status of a member of the New Jersey State Guard called to active duty with the Army or Navy would merely be a suspension of his status as an officer or enlisted man in the New Jersey State Guard. In *Kobylarz* v. *Mercer, supra,* 130 *N. J. L.* (at *p.* 52); 31 *Atl. Rep.* (*2d*) (at *p.* 214), Mr. Justice Heher said: "The strongest grounds

of public policy dictate that when the national security is periled by war the citizen's performance of this imperative duty should be stimulated and encouraged. The legislative history reveals a recognition of this principle. The civil rights and privileges of a public officer who joins the armed forces in the emergency of war are to be secured so far as is practicable and consistent with the common interest. * * * Such is the legislatively established state policy. And we find no conflicting and overriding federal policy. Section 1222 of the Revised Statutes of the United States (10 *U. S. C. A.,* § 576) invoked by appellant is not conclusive of the issue. It provides that 'No officer of the Army on the active list shall hold any civil office, whether by election or appointment, and every such officer who accepts or exercises the functions of a civil office shall thereby cease to be an officer of the Army, and his commission shall be thereby vacated.'

"It would seem that this provision is not in terms applicable to a state or municipal officer on leave of absence for service in the Army during the war, where under state law his occupancy of the civil office is suspended during the period of the exigency. But, however this may be, the statute manifestly does not operate to vacate the civil office in the case at hand. Such an interdiction upon a state officer in the national interest must be distinct and peremptory. Nor is it the province of this court to enforce the federal policy thus laid down; it is not our function to determine Gabriel's status as an officer of the Army under that section."

The plaintiff contends that he is entitled to the privileges of *R. S.* 38:12–5; *N. J. S. A.* 38:12–5, for the reason that on September 29th, 1941, he enlisted in the New Jersey State Guard and was an officer in the said guard when he enlisted in the United States Naval Reserve on November 27th, 1942. At that time the plaintiff was assigned to inactive duty in the Naval Reserve and continued to serve actively in the New Jersey State Guard. The mere enlistment of the plaintiff in the United States Naval Reserve with an immediate assignment to inactive duty of course would not entitle the plaintiff to any of the privileges enumerated in *R. S.* 38:12–5; *N. J. S. A.* 38:12–5, for the evident reason that no time or

pay would be lost by such a public employee. Further by his enlistment in the United States Naval Reserve and his assignment to inactive duty, the plaintiff was not in the naval service and he had done no more than obligate himself to serve when called upon in war or in a national emergency declared by the President. *Hilton* v. *United States* (1943), 99 *Ct. Cl.* 386. The plaintiff's right to bring this action therefore rests upon his entrance on active duty with the United States Navy as of April 20th, 1943. The plaintiff alleges that he did not prepare his resignation from the New Jersey State Guard until the night of April 19th, 1943. Further this resignation was submitted in accordance with his orders from his superior officer in the United States Naval Reserve for the express purpose of serving on active duty with the United States Navy. This court holds that the plaintiff was such a member of the New Jersey State Guard at the time he went on active duty with the United States Navy as to entitle him to the privileges of *R. S.* 38:12–5; *N. J. S. A.* 38:12–5. As was stated by Mr. Justice Minturn in *West Shore Railroad Co.* v. *State Board of Taxes,* 92 *N. J. L.* 332 (at *p.* 335); 104 *Atl. Rep.* 335 (at *p.* 336): "The inquiry obviously resolves itself into one of legislative intent, and to divine the legislative purpose we must consider not only the act *sub judice,* imposing the tax, but all kindred legislation; for the rule of construction is fundamental that when divers laws are made relating to one subject-matter, the whole must be considered as constituting one system, and mutually connected one with another. *New Jersey Insurance Co.* v. *Meeker,* 37 *N. J. L.* 282, 304." In the instant case our legislature intended to stimulate and encourage the citizen's duty to render service in a national emergency. The legislature therefore provided certain privileges for public employees who were members of the National Guard, the naval militia, and the New Jersey State Guard and who were absent due to active service with the Army or Navy of the United States. The defendant contends that this plaintiff occupies no different position than other Atlantic County employees who served in the armed forces on leave of absence but without pay. The legislature made provision for these

employees by the provisions of *R. S.* 38:23–3; *N. J. S. A.* 38:23–3. They are not considered in the same category as public employees who were also members of the militia of the State of New Jersey. Therefore this plaintiff herein is entitled to bring this action under *R. S.* 38:12–5; *N. J. S. A.* 38:12–5, because in addition to being a county employee he was also a member of the New Jersey State Guard at the time he entered upon active duty with the Navy. In this connection the court desires to point out that many private business concerns made provision whereby their former employees, in active service were paid the difference in what they had been earning and their service pay for the duration of their military service. In the case of *Roper* v. *Walsh,* 289 *N. Y.* 546; 43 *N. E. Rep.* (*2d*) 528, the Court of Appeals of New York in a *per curiam* decision upheld the right of a New York City fireman to recover the difference in pay between what he received as a member of the United States Naval Reserve and what he would have received as a city fireman. See, also, *Williams* v. *Walsh,* 289 *N. Y.* 1; 43 *N. E. Rep.* (*2d*) 498.

It seems clear that *R. S.* 38:12–5; *N. J. S. A.* 38:12–5 was intended by the legislature to apply to members of the New Jersey State Guard regardless of whether or not they volunteered or were drafted into federal service. The whole purpose and intent of the legislature in creating the State Guard was to provide a state force to take the place of the National Guard and thus by necessary implication it would consist of men ineligible for other reasons for the most part to serve on active duty with the Army or Navy. A statute often speaks as plainly by inference and the purpose which underlies it. That which is clearly implied is as much a part of the law as that which is expressed. *Brandon* v. *Montclair,* 124 *N. J. L.* 135; 11 *Atl. Rep.* (*2d*) 304.

It is a natural inference that our legislature intended to confer the privileges of *R. S.* 38:12–4 and 5; *N. J. S. A.* 38:12–4 and 5 to those who volunteer for active duty and resign their commissions in the militia as well as to those who may be drafted for active federal service and who may neglect to submit their resignations to the proper state authori-

ties. This plaintiff was within the letter and the spirit of these statutes.

It is true that the plaintiff submitted his resignation as an officer in the State Guard through proper channels to the Governor on April 19th, 1943. This resignation gave the plaintiff's reason for resigning that he was entering the United States Navy. The resignation was approved by the Battalion Commander on May 5th, 1943. It was further approved by the Commander of the State Guard on May 27th, 1943. The Governor of the state then accepted the said resignation effective April 19th, 1943. It is not clear on what date the Governor actually accepted the said resignation but it is apparent that the resignation had not cleared the official channels until at least May 27th, 1943. In the service of the United States the resignation of an officer is not complete until he receives notice of the acceptance of same. *Mimack* v. *United States,* 10 *Ct. Claims* 584. There is no specific statute concerning resignation from the New Jersey State Guard but *R. S.* 38:5–8; *N. J. S. A.* 38:5–8 provides that the provisions of law and the regulations in respect to the National Guard, and Naval Militia of the state where applicable, shall apply to the New Jersey State Guard. *R. S.* 38:3–22; *N. J. S. A.* 38:3–22 provides that a commissioned officer of the National Guard may resign his commission but such resignation shall not become effective until it shall have been accepted by the Governor. The absolute necessity of such a provision is especially apparent in war time. If military officers were permitted to resign of their own will and thereby to set the time when their resignation should become effective, chaos would result. In this case the affidavit of the Adjutant-General of the State of New Jersey reveals that the Governor accepted resignations of officers of the New Jersey State Guard effective the date prior to the date on which such individuals commenced active federal service; notwithstanding the resignation may not have been received by the Adjutant-General or accepted by the Governor until a date subsequent to the effective date of acceptance. This procedure was followed pursuant to Army Regulations 850-250, paragraph 4, which provides, "State Guard and Federal

Service—a. Selective Service.—Membership in the State Guard does not constitute ground for individual exemption from Federal miiltary service under the Selective Training and Service Act of 1940 approved 16 September 1940 (54 *Stat.* 885; 50 *U. S. C. Appendix* 301-318; 50 *U. S. C. A. Appendix,* §§ 301-318; *M. L.* 1939 *Sup. II., sec.* 2225-1-2225-16) or other Federal law.. Furthermore, such membership clearly would be incompatible with active service in the armed forces of the United States. Accordingly the State authority concerned should provide for the prompt discharge from the State Guard of such of its members as are inducted, enlisted, or otherwise engaged in the active military service of the United States." The Special Order by which the Governor accepted the plaintiff's resignation was similar to what is known as a *nunc pro tunc* entry made in appropriate cases by our courts. The phrase *nunc pro tunc* is used to express that a thing is done at one time which ought to have been performed at another but the rule of *nunc pro tunc* entries can never be invoked to change a legal status. *Rinehart* v. *Rinehart,* 91 *N. J. Eq.* 354; 110 *Atl. Rep.* 29. The legal status of the plaintiff in so far as he was a member of the New Jersey State Guard serving on active duty with the United States Navy cannot be changed by a subsequent acceptance of his resignation to the extent that he is thereby to be denied the privileges of *R. S.* 38:12-4 and 5; *N. J. S. A.* 38:12-4 and 5.

This court holds that the proper judicial construction and interpretation of *R. S.* 38:12-4; *N. J. S. A.* 38:12-4, and *R. S.* 38:12-5; *N. J. S. A.* 38:12-5, when viewed in conjunction with the existing federal and state laws on the subject requires that the court give effect to the intention of the legislature by concluding that the plaintiff is within the provisions of the said statutes. This court further holds that the plaintiff's resignation was not accepted until subsequent to his going on active duty with the United States Navy and therefore the motion to strike the complaint will be denied.